**In Re: Appeal of BROAD MOUNTAIN DEVELOPMENT COMPANY, LLC from the Decision of the Butler Township Zoning Hearing Board.**

**Appeal of: Broad Mountain Development Company, LLC.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2010.

Decided March 7, 2011.

---

Martin J. Cerullo, Pottsville, for appellant.

Michael G. Crotty, Chester Springs, for appellees Butler Township Zoning Hearing Board and Butler Township.

Anthony J. Urban and Brian J. Urban, Pottsville, for intervenors Joseph Kleeman, Benfamine and Merri Lynn Craig, Thomas Malloy, John and James Whitcomb, Robert Griffiths, and Joan and George Moyer.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge BROBSON.

Broad Mountain Development Company, LLC, (Developer) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court), which affirmed an order of the Zoning Hearing Board of Butler Township (Board), revoking a zoning permit. The Developer sought to develop a wind turbine project (the Project) in a Woodland–Conservation (WC) Zoning District located in Butler Township (Township). More than one year after the Township's zoning officer (Zoning Officer) issued the zoning permit, neighboring landowners (Intervenors [1] herein) appealed the issuance of the permit. The Board

---

1. The following individuals are Intervenors: Joseph Kleeman, Benfamine and Merri Lynn Craig, Thomas Malloy, John and James Whitcomb, Robert Griffiths, and Joan and George Moyer.

revoked the permit, concluding that the permit had been improperly issued because a wind turbine project is not a permissible use. We now affirm the order of the trial court.

On February 4, 2008, Developer met with the Township's Zoning Officer to discuss a zoning application for the Project, which would encompass 20 to 28 wind turbines located in the northeast section of the Township in a WC Zoning District.[2] The wind turbines would be spread over eleven (11) acres in an east/west direction along the Ashland Mountain as it traverses over and along the Fountain Springs valley. Although the number of turbines and their heights were to be determined at a future time following "consultant study," it was clear that the height of the wind turbines would exceed the maximum height permitted in a WC Zoning District.

Despite the fact that the Butler Township Zoning Ordinance (the Zoning Ordinance) is silent as to wind turbines, containing no provisions allowing wind turbines as a use in any zoning district, the Zoning Officer approved a zoning permit application during the February 4, 2008 meeting. The Zoning Officer wrote the following proviso on the zoning permit: "for zoning purposes only. This type of activity is allowed in the applicable zoning district as per Section 501.4 ... of [the Zoning Ordinance.]"[3] (Reproduced Record (R.R.) at 363a, 365a.) Section 501.4 sets forth exceptions to height regulations. The Zoning Officer noted on the application: "Zoning Permit Only. A wind energy facility is an allowable activity in a Woodland Conservation (WC) Zoning District per Section 501.4 ... of the [Zoning Ordinance]." (Id.) It appears from the testimony of record that the Zoning Officer and Developer left the meeting with different understandings of what had been approved. Developer testified that he believed that development of a windmill farm operation had been approved. (R.R. at 291a.) The Zoning Officer testified that he was asked only to determine whether the height requirement was applicable to a windmill operation. (R.R. at 109a, 114a.) In fact, he intended his notation to "distinguish the height waiver that was granted from a zoning permit generally permitting uses identified under Section 401 [of the Zoning Ordinance]."[4] (R.R. at 348a.) For

2. Developer contends that during its meeting with the Zoning Officer, it submitted a partially completed zoning permit application for the Project (along with a $25 application fee) and a summary of the Project with a plot plan. The Zoning Officer testified that he does not recall the summary or plot plan being submitted, although he does not deny that they were. Regardless, the Zoning Officer does not recall having seen or reviewing the summary and plot plan.

3. Section 501.4 of the Zoning Ordinance provides exceptions for height regulations, as follows:

The height limitation[s] contained herein do not apply to spires, clock towers, microwave towers, cupolas, silos, antennas, flag poles, water tanks, ventilators, chimneys, communication towers, electric transmission towers, elevator or stair bulkheads or other similar appurtenances usually required to be placed above the roof level and not intended for human occupancy.

4. Section 401.1 of the Butler Township Zoning Ordinance (Zoning Ordinance) provides for the following permitted uses within a WC Zoning District:
 (a) Forest, scenic and wild life preserves;
 (b) Single-family detached dwelling;
 (c) Public uses, structures or buildings owned or operated by the municipality or any municipal authority organized by the municipality; and
 (d) Sound and reasonable forestry activities and practices.
Section 401.6 of the Zoning Ordinance provides that the maximum building height per-

unknown reasons, the Zoning Officer failed to include the issuance of this permit on his report to the Board of Supervisors, so it was not made known even to them. (R.R. at 333a–39a, 348a.)

On June 13, 2008, Developer erected a meteorological tower (Met Tower), approximately sixty (60) meters in height, for the compilation of wind data as part of a feasibility study for the construction of the wind turbines. Developer situated the Met Tower in an area that it had cleared of trees and brush. Photographs in the record reveal that due to the clearing of the trees and the height of the Met Tower, the mountainous construction site is visible from a number of locations in Butler Township. Appellees (the Township, Board, and Intervenors) note that Developer erected the Met Tower without having obtained a building permit.[5]

On February 23, 2009, Developer filed a preliminary land development plan (Plan) for the Project, by which Developer sought approval of a road to allow access for the ultimate placement and construction of the then-determined twenty-seven (27) wind turbines. Developer paid a $20,213 fee to the Township for the review process. Developer revised and resubmitted the Plan twice based upon the Township engineer's comments. The Township's Planning Commission discussed the Plan at its meetings in March, April, and May 2009, and the *Pottsville Republican Herald* ran an article in its March 17, 2009, newspaper edition, discussing the Project. (R.R. at 366a.) The article, captioned "Butler Eyes Windmill Project," indicated that the Project was discussed at a recent Township Board of Supervisors' meeting and that several waivers (from the Township's Subdivision and Land Development Ordinance) were being considered. (*Id.*) The article did not indicate that a zoning permit or other approvals had been issued. (*Id.*) Rather, the article noted that "the [P]roject is in the preliminary stages and the date of the construction of the windmills, if approved, was too far off to pin down." (*Id.*) Neighboring landowners appeared at the May 11, 2009, Planning Commission meeting.

On May 19, 2009, Appellee Kleeman filed with the Board an appeal of the zoning permit. On May 27, 2009, forty-seven (47) additional homeowners filed with the Board a joint appeal of the zoning permit. The Board dismissed thirty-four (34) of the homeowners for failure to appear at the hearings. The Board conducted hearings in June and July 2009, during which the Board received testimony from various landowners.

At the outset of the hearings, the Board, in an apparent attempt to move the hearing forward expeditiously, cautioned that it preferred not to hear repetitive comments in favor of or against the Project. (R.R. at 22a.) Rather, the Board preferred "those kinds of comments to be limited to one person who will present the comment on behalf of . . . the appellants here where

mitted in the WC Zoning District is thirty-five (35) feet or two and one-half (2½) stories.

5. Appellees also note that construction of wind turbines did not begin within six (6) months from the date of issuance of the zoning permit and that no land development plans had been submitted during that time period. Section 702.2 of the Zoning Ordinance provides that:

Zoning permits shall expire within six (6) months from the date of issuance, if work described in any permit has not begun. If work described in any approved permit has begun within the six (6) months period, said permit shall expire after two (2) years from the date of issuance thereof. However, an extension of time may be granted by the governing body.

This issue, however, is not before the Court in this matter.

there's a number of appellants." (*Id.*) Attorneys Anthony Urban and Brian Urban, who appeared to represent Intervenor Joseph Kleeman, agreed to represent (pro bono) the other Intervenors throughout the course of the proceedings. Thereafter, the Board proceeded to take testimony from eleven (11) individuals.

Upon conclusion of the hearings, the Board revoked Developer's zoning permit. The Board reasoned that Developer failed to timely construct the proposed wind turbines within the six (6) month permit expiration period; the zoning permit did not grant any zoning relief other than relief from the height limitations; and windmill farms are not permitted uses in the WC District. The Board also determined that nine (9) of the eleven (11) then-remaining objecting neighbors presented sufficient evidence to establish standing and that their appeals were timely.

Developer appealed to the trial court. The individuals dismissed by the Board for failure to appear filed an application to intervene, and the trial court granted intervention. The Board, Township, and Intervenors also intervened. The trial court considered (1) whether the application for leave to intervene filed on behalf of the individuals dismissed by the Board for failure to appear was proper, (2) whether the landowners had standing to appeal the granting of the zoning permit and whether their appeal was timely, and (3) whether the Board's decision constituted an error of law or a manifest abuse of discretion.

The trial court concluded that intervention was improper, and it further concluded that eleven (11) landowners had standing, but only nine (9) of those landowners had filed a timely appeal. As to the merits, the trial court concluded that the Board properly revoked the zoning permit because the Zoning Officer had no authority to issue a zoning permit for a wind farm in a WC Zoning District. Developer appealed to this Court, and the nine (9) intervenors granted standing below (Intervenors herein) again intervened.

On appeal,[6] Developer argues that the trial court and Board erred in determining that Intervenors had standing to appeal and that Intervenors' appeals were timely. Developer also argues that it enjoyed a legally protected vested right in the zoning permit such that the trial court erred in affirming the Board's revocation of the permit.

■ First, we will consider whether the trial court and Board erred in determining that Intervenors had standing to appeal. Section 908(3) of the Pennsylvania Municipalities Planning Code (MPC),[7] provides that the following persons shall be afforded standing before a zoning hearing board:

> The parties to the hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board for that purpose.

6. "Because the trial court did not take any additional evidence, our scope of review is limited to determining whether the [Board] committed an error of law or manifestly abused its discretion." *Diversified Health Assocs., Inc. v. Zoning Hearing Bd. of the Borough of Norristown*, 781 A.2d 244, 246–47 (Pa.Cmwlth.2001). This Court will find an abuse of discretion only where the Board's findings are not supported by substantial evi-

dence. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983). "Substantial evidence" is "such relevant evidence as a reasonable mind must accept as adequate to support a conclusion." *Id.*

7. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(3).

A person who wishes to contest a zoning approval can initiate an appeal or challenge if he is a "person aggrieved." Section 913.3 of the MPC.[8] To establish "aggrieved" status for purposes of standing, a party must have a substantial, direct, and immediate interest in the claim sought to be litigated. *Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19 (Pa.Cmwlth.2009). In order to have a substantial interest, there must be some discernible adverse affect to some interest other than the abstract interest of all citizens in having others comply with the law. *Pilchesky v. Doherty*, 941 A.2d 95 (Pa.Cmwlth.2008). The interest must be immediate and not a remote consequence of the judgment. *Id.* A person has standing where he has suffered or will suffer "injury in fact" and the interest he seeks to protect is arguably within the zone of interest sought to be protected or regulated by the statute or constitutional guarantee in question. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Aesthetic evaluation cannot be equated with a substantial interest in the issuance of a zoning permit. *Miller v. Upper Allen Twp. Zoning Hearing Bd.*, 112 Pa.Cmwlth. 274, 535 A.2d 1195 (1987). An objector who is located in close proximity to the land involved in a zoning application normally has standing to contest the application. *Active Amusement Co. v. Zoning Bd. of Adjustment*, 84 Pa.Cmwlth. 538, 479 A.2d 697 (1984).

Developer contends that Intervenors lack standing because they do not have a substantial interest in the property. Developer attempts to argue that the Intervenors are not "aggrieved" because they only have a remote and indirect interest in the Project and raise only an aesthetic objection. Specifically, Developer notes that Intervenors all reside on or near Pennsylvania Route 61. Because none of the activity associated with the Project will take place along this route, Developer asserts that Intervenors do not reside within sufficient proximity to the Project to have a substantial interest. Moreover, to the extent that Intervenors object on the basis of the aesthetics of wind turbines on a mountain ridge, such does not constitute a "substantial interest" in the issuance of the permit. We disagree with Developer's contention that Intervenors failed to establish a substantial interest.

Intervenors testified to more than aesthetic concerns surrounding the Project. Mr. Kleeman testified first on behalf of Intervenors and offered the most extensive testimony. Mr. Kleeman testified that as a result of the proximity of the Project to his property, he may be affected by continual noise issues (R.R. at 31a–32a), incidents of flickering (R.R. at 31a–32a), throwing and shedding of ice in freezing conditions (R.R. at 31–32a, 60a), possible fires (R.R. at 32a), and potential health problems (R.R. at 31a). Mr. Kleeman and Mr. Griffiths both testified to concerns relating to decline in property values. (R.R. at 61a, 217a–18a.) Mrs. Craig expressed concerns regarding low-frequency vibrations and potential health problems.[9] (R.R. at 187a–89a.) Given that Intervenors all live within a half (½) mile of the Project, with some living within 1,000 feet to 1,300 feet of the Project, the above-concerns testified to by Intervenors are

8. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10913.3, added by Act of December 21, 1988, P.L. 1329.

9. Mrs. Craig specifically testified to concerns regarding Wind Turbine Syndrome, vibroacoustical disease symptoms, and aggravation of her existing ménière's disease. (R.R. at 187a–89a).

applicable to all of their properties.[10] (R.R. at 59a, 188a–89a.)

Developer implies that each individual Intervenor must himself testify to these potential adverse effects of the Project, thereby, in essence, requiring redundant testimony in order for a substantial interest to be established for the individual Intervenor. While we agree that standing must be determined on an individual basis, we reject Developer's contention that the record is insufficient to confer standing on each individual Intervenor. As noted above, for purposes of the hearing before the Board, Intervenors all were represented by the same counsel, and the Board requested that counsel and the parties limit comments, where possible, to one person who will represent the interests of the others.

The credible evidence demonstrates that Intervenors share a substantial, direct, and immediate interest in the potentially negative effects of the Project. Mr. Kleeman and the other Intervenors testified to numerous concerns that are relevant to all of the Intervenors because they all reside within a similarly close distance to the Project. This Court is satisfied that each individual Intervenor has a substantial interest sufficient to confer standing based on the testimony regarding and the health, welfare, and safety concerns noted above and their proximity to the Project. *See Grant v. Zoning Hearing Bd. of Twp. of Penn,* 776 A.2d 356 (Pa.Cmwlth.2001) (holding, in part, that by virtue of living within 6,600 feet of proposed electric generation facility, landowners had standing). Therefore, we conclude that the trial court

and Board did not err in determining that Intervenors have standing.

 Next, we will consider whether the trial court and Board erred in determining that Intervenors' appeals were timely. Section 805.2 of the Zoning Ordinance provides that an appeal to the Board must be filed within thirty (30) days of the issuance of a zoning permit unless such person proves that the person had no notice, knowledge, or reason to believe that such approval was given. Likewise, Section 914.1(a) of the MPC[11] provides, in relevant part:

(a) No person shall be allowed to file any proceeding with the board later than 30 days after an application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.

"In other words, where an objector proves he lacked notice of the issuance of a permit, the 30–day appeal period is tolled until he possesses knowledge or a 'reason to believe' the approval was granted." *Berryman v. Wyoming Borough Zoning Hearing Bd.,* 884 A.2d 386, 389 (Pa. Cmwlth.2005). It is the objectors' burden to prove that their appeal is timely and that they had no notice, knowledge, or reason to believe that approval had been given. *Haaf v. Zoning Hearing Bd. of Twp. of Weisenberg,* 155 Pa.Cmwlth. 608, 625 A.2d 1292 (1993). Therefore, objectors

---

10. Developer did not rebut any of the potential issues or concerns identified above with contrary evidence, and the Board found Intervenors' testimony to be credible. (Board decision, finding of fact no. 30, attached to Appellant's brief.)

11. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10914.1, added by Act of December 21, 1988, P.L. 1329.

must establish when they received notice to effectively toll the thirty (30) day appeal period. *Schoepple v. Lower Saucon Twp. Zoning Hearing Bd.,* 154 Pa.Cmwlth. 658, 624 A.2d 699 (1993).

With regard to issuance of permits by zoning officers, this Court in *Berryman* explained:

Generally, zoning officers are not required to provide notice of the issuance of building permits. As a result, members of the public do not usually learn of the issuance of a permit until the landowner commences construction. When notice of a permit is not provided, the 30–day appeal period does not begin to run until the date when a landowner engages in construction activities, which are inconsistent with the previously permitted use of the property, and are visible to the general public.

*Berryman,* 884 A.2d at 389 (citations omitted).

This Court in *Berryman* considered when the time period for appealing the issuance of a building permit for a pole barn ran. The borough's zoning officer issued the building permit on October 28, 2003. Construction of the pole barn became visible from the roadway and adjoining properties no later than November 1, 2003. As such, we determined that the 30–day appeal period contained in Section 914.1(a) of the MPC began to run on that date, making December 1, 2003, the last day to challenge the issuance of the landowners' permit. We rejected objectors' argument that the 30–day appeal period should not begin to run until November 7, 2003, the date the objectors received actual notice of the building permit. The objectors contended that their status as out-of town property owners supported such a result. We rejected this argument for "legal and practical reasons," opining:

First and foremost, actual notice is not a requirement under the MPC. Second, to hold otherwise would create an absurd result. Thus, absentee landowners could enjoy a longer appeal period than those residing near development. Similarly, landowners temporarily absent from an area by reason of employment, vacation, or pressing family business would enjoy differing periods within which to challenge a permit. The resulting lack of predictability would make it impossible for a developer to know when it was safe to incur construction costs. We conclude the provision of Section 914.1(a) was not intended to produce such a result.

*Berryman,* 884 A.2d at 389–90 (citations omitted).

In the case now before us, Developer argues that the Board and trial court applied the wrong standard for determining timeliness, and, thus, erred as a matter of law. Developer contends that the Board and trial court focused on *when the landowners first learned* of the issuance of the permit rather than *when the landowners had reason to believe that such approval had been given,* the latter of which involves the concept of constructive notice. Developer contends that Intervenors had constructive notice of the issuance of the zoning permit earlier than thirty (30) days prior to filing their appeals, because the construction of the Met Tower provided notice of some form of use not consistent with the narrowly restricted uses permitted in the WC Zoning District. That the Met Tower could have been mistaken for some type of tower for cell phone service or other communication facility rather than a wind turbine enterprise is irrelevant. Appellees counter that Intervenors' appeals were timely because they did not have actual or constructive notice of the issuance of the zoning permit until within

thirty (30) days of the filing of their appeals—i.e., May 19 or 28, respectively.

In order to determine the timeliness of Intervenors' appeals, we must consider on an individual or case-by-case basis when each individual Intervenor received notice that a zoning permit had been issued. This involves consideration of concepts of actual notice and constructive notice, keeping in mind that the Zoning Ordinance considers when an individual "had notice, knowledge or reason to believe that" a zoning permit had been issued.

■■■ As to actual notice, if the individual Intervenor received actual notice more than thirty (30) days prior to filing his appeal, then that individual Intervenor's appeal is untimely. Mr. Kleeman testified that he learned of the issuance of the zoning permit on May 11, 2009. (R.R. at 31a–32a). Mr. and Mrs. Craig testified that they first became aware of the issuance of the zoning permit on May 11, 2009, the date of the Planning Commission meeting.[12] (R.R. at 179a, 189a–94a.) John and James Whitcomb did not provide any testimony regarding when they learned of issuance of the zoning permit and, therefore, failed to establish that their appeals were timely.[13] (R.R. at 214a–15a.) Thomas Malloy testified that he, too, first learned of the issuance of the zoning permit on May 11, 2009. (R.R. at 197a, 201a.) Similarly, Robert Griffiths testified that he first learned of issuance of the zoning per-

mit at the May 11, 2009 Planning Commission meeting. (R.R. at 217a.) Joan Moyer testified that she and her husband, George, first learned of the Project from Mrs. Craig.[14] (R.R. at 221a–24a.) Mrs. Moyer testified that her husband attended a meeting where the Project was discussed, but she could not provide any information regarding the type or date of the meeting that he attended. *Id.* Given, however, that the Board found credible the testimony of Mrs. Craig that she first learned of the issuance of the permit on May 11, 2009, Mr. and Mrs. Moyer necessarily would have learned of the issuance of the permit *on or after* May 11, 2009. Based upon the above described testimony, with the exception of John and James Whitcomb, the Intervenors established that they first had actual notice of the issuance of the zoning permit on May 11, 2009. Therefore, provided those Intervenors did not have constructive notice on an earlier date, their appeals (filed May 19 and May 27, 2009) were timely filed.

Developer focuses on constructive notice, arguing that the newspaper article or the Planning Commission and Board of Supervisor meetings related to the land development plan constituted constructive notice of the issuance of the permit, as did construction of the Met Tower. However, Developer does not point to any evidence that suggests that issuance of the permit was revealed at any meeting prior to the

12. Although the Craigs and Mr. Malloy attended a Board of Supervisors meeting on April 21, 2009, issuance of a building permit was not revealed at that time. (R.R. at 165a, 174a–79a, 188a, 210a, 369a.)

13. When the Board called both John and James Whitcomb to testify, they simply stated that they supported the testimony already presented, and the Board accepted that representation as testimony in the matter. (R.R. at 214a–15a.) Developer notes that John and James Whitcomb were never sworn in and

placed under oath, and Developer contends that unsworn testimony is disfavored by courts in zoning proceedings. Because we have concluded that John and James Whitcomb failed to establish that their appeals were timely, we need not address the legal significance, if any, of their unsworn testimony in this context.

14. The Board swore in George Moyer and permitted him to adopt the testimony of his wife.

May 11, 2009 Planning Commission meeting, and the newspaper article did not include such information. Rather, the newspaper article discussed the Project in very general terms, without reference to the issuance of any zoning permit. The article appeared to support the general belief no approvals had been granted to allow construction of the Project. Moreover, we agree with Appellees that the erection of the Met Tower did not constitute constructive notice. It would be extreme to credit Developer's assertion that the erection of a single meteorological tower on nearly 1,100 acres (which does not bear the resemblance of a windmill turbine) and some minor clearing would somehow provide the public with notice that a zoning permit was granted for the placement of twenty-seven (27) wind turbines. We agree with Appellees that, apart from not resembling a wind turbine, a meteorological tower is not a wind turbine and not a component of a string of wind turbines that collectively generate electricity. Thus, construction of the Met Tower, alone, was insufficient to constitute constructive notice.[15] We, therefore, agree with the Board's determination that, under the factual circumstances presented by this case, Intervenors established that they had no notice, knowledge, or reason to believe that the Zoning Permit had been approved by the Zoning Officer until May 11, 2009. The trial court and Board, therefore, properly concluded that Intervenors' appeals (with the exception of John and James Whitcomb) were timely.

Finally, we will consider whether Developer enjoyed a legally protected vested right in the zoning permit such that the trial court erred in affirming the Board's revocation of the permit. Generally, a municipal permit issued illegally or in violation of the law, or under a mistake of fact, confers no vested right or privilege on the person to whom the permit has been issued, and it may be revoked notwithstanding that the person may have acted upon the permit. *Peluso v. Kistner*, 970 A.2d 530 (Pa.Cmwlth.2009). Any expenditures made in reliance upon such permit are made at the person's own peril. *Id.* Moreover, every person is presumed to know the extent of power of the municipal authorities. *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1212 (Pa.Cmwlth.2009). An exception must be recognized in certain circumstances such that vested rights can be acquired in a permit even if the permit is issued incorrectly or in error. *Dep't of Envt. Resources v. Flynn*, 21 Pa.Cmwlth. 264, 344 A.2d 720, 723 (1975). Five factors must be weighed in determining whether one has acquired a vested right as a result of a permit improperly issued by a government entity, those being: (1) due diligence in attempting to comply with the law; (2) good faith throughout the proceedings; (3) the expenditure of substantial unrecoverable funds; (4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of a permit; and (5) the insufficiency of evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the

---

15. Although the Met Tower and its surrounding clearing are visible from various points in the Township, we also note that Mr. Kleeman testified that he never saw the Met Tower (which is located on top of a wooded mountain) until was taking his granddaughter to swim lessons at the high school in June, just prior to the first hearing in this matter and *after* he filed his objections to the issuance of the permit. (R.R. at 55a–56a). The Zoning Officer testified that he has not seen the Met Tower. (R.R. at 129a, 135a). There is no testimony of record that the other Intervenors saw the Met Tower, let alone associated it with a wind farm or any other construction project.

use of the permit. *Petrosky v. Zoning Hearing Bd. of Twp. of Upper Chichester,* 485 Pa. 501, 507, 402 A.2d 1385, 1388 (1979).

A claim of vested rights to a permit, however, must fail where a timely appeal of the permit at issue has been taken. *Beecham Enters., Inc. v. Zoning Hearing Bd. of Kennedy Twp.,* 530 Pa. 272, 608 A.2d 1017 (1992). As discussed above, this Court has concluded that Intervenors' appeals were timely. Therefore, under *Beecham,* consideration of the other *Petrosky* factors is unnecessary, as Developer cannot establish entitlement to a vested right in the face of a timely appeal by Intervenors.

Accordingly, the order of the trial court is reversed to the extent that it determined the appeals of John and James Whitcomb to be timely and affirmed in all other respects.

### ORDER

AND NOW, this 7th day of March, 2011, the order of the Court of Common Pleas of Schuylkill County is REVERSED, in part, and AFFIRMED, in part. The order is REVERSED to the extent that it determined the appeals of John and James Whitcomb to be timely, and it is AFFIRMED in all other respects.