IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Brett Hamilton and     :
Alexandra Jane Hamilton,     :
               Appellants   :
     :
     v.     : No.  49 C.D. 2023
     : Argued:  November 6, 2023
Lower Merion Township     :
Zoning Hearing Board     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED:  December 20, 2023

Michael Brett Hamilton and Alexandra Jane Hamilton (collectively, the Hamiltons) appeal from the December 15, 2022 order of the Court of Common Pleas of Montgomery County (Common Pleas) affirming the decision of the Lower Merion Township (Township) Zoning Hearing Board (Board) to dismiss the Hamiltons' *nunc pro tunc*[1] appeal as untimely. On appeal, the Hamiltons argue they did not have reason to believe the Township's zoning officer (Zoning Officer) approved a permit for the development and use of their neighbors' property more than 30 days before they filed their *nunc pro tunc* appeal. In addition, the Hamiltons

---

[1] *Nunc pro tunc* is Latin for "now for then," and is defined as "[h]aving retroactive legal effect through a court's inherent power." Black's Law Dictionary 1287 (11th ed. 2019).

argue the Board violated their constitutional due process rights by dismissing their appeal. Upon review, we affirm.

## I.     Background

The Zoning Officer issued a zoning permit (Permit) on February 24, 2021, to TSDR Youngsford Associates, LLC (Intervenor) for property located at 1157 Youngs Ford Road, Gladwyne, Pennsylvania (the Property). Reproduced Record (R.R.) at 231. The Permit allowed Intervenor to change the use of the Property from a single-family dwelling to a community residential facility[2] for eight elderly individuals. *Id.* The Township also issued a commercial building permit to Intervenor on July 12, 2021, to allow demolition work inside the Property. *Id.* at 232-33. After receiving both permits, Intervenor began to renovate the Property.

The Hamiltons, who live immediately adjacent to the Property, were not notified that Zoning Officer issued Intervenor the Permit. *See* Supplemental Reproduced Record (S.R.R.) at 23a, 26a-27a.[3] During the summer and fall of 2021, the Hamiltons noticed contractor vans and a dumpster parked at the Property. *Id.* at 35a-36a, 46a-47a, 58a. Although these contractor vans were parked on the

---

[2]  The Township's Zoning Code defines a "Community Residential Facility/Program," in relevant part, as:

> An establishment, sometimes referred to as a "community living arrangement" or a "group home," licensed by the Commonwealth of Pennsylvania, that provides a home for not more than eight handicapped or elderly individuals, excluding staff who do not reside on the property, who live and cook together as a single housekeeping unit.

Lower Merion Township, Pa., Zoning Ordinance (1927), *as amended.*

[3]  Instead of numbering the pages in the record by using numbers followed by "a" for the reproduced record and numbers followed by "b" for the supplemental reproduced record, as required by Rule of Appellate Procedure 2173, the Hamiltons used numbers only for the reproduced record and numbers followed by "a" for the supplemental reproduced record.

Hamiltons' property on "many instances," sometimes even in their driveway "prohibiting [them] from leaving [their] own land," the Hamiltons did not contact Intervenor or complain about the construction activities. *Id.* at 46a, 47a-49a.

The Hamiltons admitted they "became aware of a business advertising at [the Property] as a senior living facility" on October 8, 2021, when a neighbor informed them about Intervenor's use of the Property. *See* S.R.R. at 26a, 59a-61a. Also on October 8, 2021, the Hamiltons visited Intervenor's website, which the Hamiltons admit "was advertising a senior living facility and touting different benefits of [the P]roperty." *Id.* at 27a. Although Intervenor did not specifically identify the Property on its website, the Hamiltons recognized a rendering of the Property on Intervenor's website. *Id.* at 27a, 29a, 61a. On October 8, 2021, the Hamiltons also spoke with Intervenor's Executive Director (Executive Director) and asked her whether Intervenor was converting the Property to a senior living facility. *Id.* at 52a. Executive Director replied in the affirmative and further elaborated that eight elderly people would be residing at the Property. *Id.* at 52a, 78a. The Hamiltons informed Executive Director they were "shocked and upset" to find out the Property would be used as a senior living facility. *Id.* at 63a-64a.

Shortly after discovering Intervenor's plans, the Hamiltons hired an attorney to file a request with the Township under the Right-to-Know Law[4] for documentation related to the Property. S.R.R. at 29a-31a.[5] On October 10, 2021, the Hamiltons sent a separate letter to Executive Director objecting to Intervenor's use of the Property as a senior living facility. R.R. at 239. On October 14, 2021, the Township responded to the Hamiltons' request under the Right-to-Know Law by providing the Hamiltons with a copy of Intervenor's Permit. S.R.R. at 50a-51a. The

---

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.
[5] The record does not include the actual request or the date counsel submitted the request.

3

Hamiltons assert they did not know Intervenor received the Permit until October 14, 2021. R.R. at 97. Alexandra Hamilton explained why they were previously unaware of the Permit as follows:

> Most of the stuff over the summer [of 2021], I remember them coming in and it looking like the whole place was just being demoed, and stuff being stripped out, et cetera. And according to a neighbor and thinking that they were just flipping and redoing the house, the house was in not great shape, but we all knew that. I wasn't unexpecting of that given how many houses in the area are being completely flipped and redone with the pandemic. **I don't think we would have any way, until we saw** ramps and whatnot, and **this website to understand entirely that this was something different.**

S.R.R. at 76a-77a (emphasis added).

On November 11, 2021, the Hamiltons filed an appeal of Intervenor's Permit *nunc pro tunc* with the Board, arguing they should be permitted to appeal because their appeal was filed within 30 days of their receipt of notice of the Permit. *See* R.R. at 1-9. The Board conducted two hearings on the Hamiltons' *nunc pro tunc* appeal. *See* S.R.R. at 1a-89a; R.R. at 88-180. Ultimately, the Board concluded it lacked subject matter jurisdiction to hear the merits of the Hamiltons' appeal because the Hamiltons filed their appeal more than 30 days after they had reason to believe the Zoning Officer had approved the Permit. R.R. at 375. Accordingly, the Board dismissed the Hamiltons' appeal. *Id.* at 394.

The Hamiltons appealed the Board's decision to Common Pleas. Common Pleas reviewed the record before the Board without receiving new evidence. R.R. at 461. Common Pleas affirmed the Board's decision to dismiss the Hamiltons' appeal as untimely, concluding the Board "did not abuse its discretion or commit an error of law" when it determined the Hamiltons filed their appeal more than 30 days

4

after they had reason to believe the Zoning Officer approved the Permit. *Id.* at 464-65.

The Hamiltons appealed Common Pleas' decision to this Court. On appeal, the Hamiltons argue they did not have reason to believe the Township approved the Permit more than 30 days before they filed their appeal. *See* Appellants' Br. at 28. In addition, the Hamiltons argue the Board violated their constitutional due process rights by dismissing their appeal. *See id.* at 44.

## II. Analysis

Because "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). Thus, we evaluate whether the Board committed an error of law or abused its discretion. *Id.* Regarding whether the Board committed an error of law, we conduct a *de novo* review and "are not bound by the legal conclusions of the governing body or lower court[]." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted). Regarding whether the Board abused its discretion, we will find an abuse of discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* at 1024. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018).

## A. Timeliness of Appeal

Section 914.1 of the Pennsylvania Municipalities Planning Code (MPC)[6] provides, in relevant part:

> (a) No person shall be allowed to file any proceeding with the board later than 30 days after an application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner **unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.**

53 P.S. § 10914.1 (emphasis added). "In other words, where an objector proves he lacked notice of the issuance of a permit, the 30-day appeal period is tolled until he possess knowledge or a 'reason to believe' the approval was granted." *Berryman v. Wyoming Borough Zoning Hearing Bd.*, 884 A.2d 386, 389 (Pa. Cmwlth. 2005). The objector carries the burden of proving his appeal is timely. *In re Broad Mountain Dev. Co., LLC*, 17 A.3d 434, 441 (Pa. Cmwlth. 2011) (citation omitted).

Regarding the issuance of permits by a zoning officer, we explained in *Berryman*:

> Generally, zoning officers are not required to provide notice of the issuance of building permits. As a result, members of the public do not usually learn of the issuance of a permit until the landowner commences construction. When notice of a permit is not provided, the 30-day appeal period does not begin to run until the date when a landowner engages in construction activities, which are inconsistent with the previously permitted use of the property, and are visible to the general public.

---

[6]   Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. Section 914.1 was added by the Act of December 21, 1988, P.L. 1329.

*Berryman*, 884 A.2d at 389 (citations omitted). In *Berryman*, a zoning officer issued a permit for the construction of a pole barn on October 28, 2003. *Id.* at 388. Construction of the pole barn became visible from a public roadway and the adjoining properties not later than November 1, 2003. *Id.* Noting that actual notice is not a requirement under Section 914.1 of the MPC, we rejected the objectors' argument that the 30-day appeal period did not begin to run until they received actual notice on November 7, 2003. *Id.* at 389-90. Instead, we determined Section 914.1's 30-day appeal period began to run on November 1, 2003, the date the construction became visible. *Id.* at 389.

In *In re Broad Mountain*, we explained that Section 914.1 of the MPC's "reason to believe" language incorporates the concept of constructive notice and requires a case-by-case analysis. *In re Broad Mountain*, 17 A.3d at 443. There, a township zoning officer approved a permit for a wind farm on February 4, 2008. *Id.* at 437. On June 13, 2008, the developer erected a 60-meter-high meteorological tower to obtain wind data as part of a feasibility study for the construction of wind turbines. *Id.* at 438. On March 17, 2009, a local newspaper ran an article discussing the project, indicating it was discussed at recent township meetings, and noting the project "is in the preliminary stages and the date of the construction of the windmills, if approved, was too far off to pin down." *Id.* (citation omitted). Neighboring landowners attended a meeting on May 11, 2009, where they learned the zoning officer already issued developer a permit. *Id.* Neighboring landowners filed appeals within 30 days of May 11, 2009, which the zoning hearing board accepted as timely. *Id.* at 443.

In affirming the zoning hearing board's determination that the neighboring landowners' appeals were timely, this Court disagreed with the developer's belief

its meteorological tower or the local newspaper article placed neighboring landowners on constructive notice the zoning officer had approved a permit for a wind farm. *In re Broad Mountain*, 17 A.3d at 443-44. Regarding the meteorological tower, we noted it was a single tower on nearly 1,100 acres of land, it did not "bear the resemblance of a windmill turbine," and it required only some minor clearing of land. *Id.* at 444. As a result, we rejected the developer's argument the tower provided the public with notice that it received a zoning permit to construct 27 wind turbines. *Id.* With regard to the newspaper article, we noted it "discussed the [p]roject in very general terms, without reference to the issuance of any zoning permit" and it "appeared to support the general belief no approvals had been granted to allow construction of the project." *Id.*

Here, the Hamiltons observed construction activities, which they described as interior renovations, on the Property for months. Then, on October 8, 2021, a neighbor told them a business was advertising a senior living facility on the Property. The Hamiltons confirmed this information by visiting the business's website on October 8, 2021. The Hamiltons also spoke with Executive Director on October 8, 2021, who confirmed the Hamiltons' understanding that the Property would be used as a senior living facility. As a result of the information the Hamiltons obtained on October 8, 2021, they sent a letter to Executive Director objecting to Intervenor's use of the Property as a senior living facility.

Because Intervenor conducted its construction activities indoors, those activities alone may not have given the Hamiltons reason to believe Intervenor was changing the use of the Property. The Hamiltons, however, obtained information on October 8, 2021, that Intervenor's construction activities were not consistent with the Property's previously permitted use. Therefore, like the pole barn in *Berryman*,

8

and unlike the meteorological tower and newspaper article in *In re Broad Mountain*, Intervenor's construction activities, website, and Executive Director gave the Hamiltons constructive notice that Intervenor obtained the Permit.

Despite their observations, the Hamiltons argue they did not know or have reason to know the Zoning Officer granted Intervenor's Permit until they received a copy of the Permit on October 14, 2021. In essence, the Hamiltons are asserting they were permitted to assume Intervenor did not have a permit up until the moment they received information specifically showing zoning officer issued Intervenor the Permit. If we permitted this assumption, Section 914.1 of the MPC would be reduced to an actual notice or knowledge standard. As this Court explained in *Berryman*, however, Section 914.1 of the MPC does not require actual notice. *Berryman*, 884 A.2d at 389-90. For this reason, we rejected the objectors' similar arguments in *Berryman*. *Id.*

The Hamiltons argue *In re Broad Mountain* stands for the proposition the timeliness of an appeal under Section 914.1 of the MPC depends on when an appellant receives notice of a zoning permit's issuance. *See* Appellants' Br. at 22. The Hamiltons also argue *In re Broad Mountain* establishes "construction fails to provide the requisite notice . . . if it cannot be recognized immediately as inconsistent with the prior use of the property." *Id.* at 23. We reject these arguments. As fully outlined above, Section 914.1 of the MPC does not require actual notice. Additionally, we viewed the totality of the circumstances in *In re Broad Mountain*, determining that under the specific facts presented the construction of a meteorological tower did not provide constructive notice of the approval of 27 wind turbines.

The Hamiltons observed construction on the Property for months and obtained specific information on October 8, 2021, demonstrating Intervenor's use of the Property was inconsistent with its previously permitted use. As a result, the Hamiltons had constructive notice of the Permit at least by October 8, 2021, thereby starting their 30-day appeal period under Section 914.1 of the MPC. The Hamiltons' November 11, 2021 appeal was, therefore, untimely.

## B. Due Process Rights

Even though the Hamiltons' appeal was untimely, the Hamiltons argue the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend XIV, requires the Board to provide them, as aggrieved parties, with notice and an opportunity to be heard. *See* Appellants' Br. at 45 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Because the Board dismissed their appeal on the basis of untimeliness under Section 914.1 of the MPC without providing them an opportunity to be heard on the merits of their appeal, the Hamiltons argue the Board violated their due process rights. *Id.* at 44-48.

In *Falkler v. Lower Windsor Township Zoning Hearing Board*, 988 A.2d 764, 769-70 (Pa. Cmwlth. 2010), two parties filed appeals of a zoning officer's issuance of a certificate of nonconformance more than 30 days after they became aware of the certificate's issuance. *Id.* at 766-67. The parties, similar to the Hamiltons, argued the zoning hearing board's application of Section 914.1 of the MPC's appeal period violated their notice and due process rights. *Id.* at 767. In rejecting this argument, this Court noted:

> The parties' due process rights are both recognized, and protected, by Section 914.1(a) of the MPC . . . which allow[s] for [an] appeal . . . within thirty days. Those rights are further protected by the express exception to the thirty-day appeal period to be made where a party can show that it was unaware of the [permit's] issuance, in which instance

10

a potentially aggrieved party is given thirty days beyond that date of awareness.

*Id.* at 769. In *Falkler*, we concluded "[t]he mere fact that neither party made timely employment of its clear due process rights in this matter, on its own volition, does not constitute any denial of any due process rights herein." *Id.* at 770.

As we explained in *Falkler*, Section 914.1 of the MPC recognizes and protects the Hamiltons' due process rights. The Hamiltons' failure to appeal within the time permitted, as in *Falkler*, does not constitute a denial of the Hamiltons' due process rights.

### III. Conclusion

For the reasons set forth above, we affirm Common Pleas' decision affirming the Board's dismissal of the Hamiltons' appeal.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Brett Hamilton and       :
Alexandra Jane Hamilton,        :
                Appellants  :
                         :
        v.            : No.  49 C.D. 2023
                         :
Lower Merion Township       :
Zoning Hearing Board         :

# **O R D E R**

     **AND NOW**, this 20th day of December 2023, the December 15, 2022 order of the Court of Common Pleas of Montgomery County is **AFFIRMED**.

 

_____
STACY WALLACE, Judge