IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                           :
     v.                :  No. 1292 C.D. 2019
                           :  ARGUED: June 9, 2020
1208 SUSQ LLC,         :
          Appellant   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ELLEN CEISLER, Judge (P)
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: July 9, 2020

      1208 SUSQ LLC (Developer) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court).[1]  Developer failed to install a required meter pit in connection with water service to a development project of six townhouses (Project) in the City of Philadelphia (City).  The City therefore refused to install water meters at the Project.  The Project accessed unmetered water service.  The Philadelphia Water Department (Department) filed a Complaint Notice against Developer for theft of services related to the unmetered water service at the Project.  The Philadelphia Board of Licenses and Inspections Review (Board) overruled Developer's appeal of the Complaint Notice.  The trial court affirmed the determination of the Board.  After thorough review, we affirm the trial court's order.

## I. **Background**

      In March 2017, Developer's plumbing contractor submitted pre-permit applications to the Department in connection with the plumbing installation for the

---

[1] The Honorable Paula Patrick presided.

Project.  The application forms included boxes to be completed for "Backflow Preventer Required"[2] and "Meter Pit Required"; the contractor filled in "Yes" for both.  Reproduced Record (R.R.) at 156a-57a.  The site plan for the Project's fire suppression service main likewise showed a meter pit with backflow prevention located under the common driveway for the Project.  *Id.* at 155a.  In an email the following week, the Department's Permit Supervisor confirmed to Developer's agent that all backflow prevention devices for the Project were required to be located in the meter pit, not in the individual townhouses.  *Id.* at 159a.  The email also mandated:  "Meter pit to be correctly sized and approved."  *Id.*  In a responding email, Developer's agent stated Developer was requesting an amendment from a four-inch fire suppression water supply line to a two-inch line for the Project;[3] that email acknowledged that "[e]verything else is consistent."  *Id.* at 158a; *see* Notes of Testimony, 6/26/18 (N.T.) at 21 (explaining required size of fire suppression water line).  Although Developer alleges it simultaneously requested an amendment to eliminate the meter pit, no such request is documented in the record.  Instead, Developer relies on its own unsupported averment that it made such a request, together with testimony from the sprinkler system contractor, Aqueduct Fire Protection Systems LLC (Aqueduct), concerning the amendment request regarding the change in the fire suppression water line size.  *See* N.T. at 40.  However, Aqueduct's permit for the sprinkler system, including any amendment thereto, was not the Department's responsibility.  *See* N.T. at 13, 21-23.  Therefore, amendment

---

[2] Backflow prevention is necessary in order to protect the public water supply from contamination in the event of damage or contamination to an individual water line.  *See* 25 Pa. Code § 109.709; Philadelphia Water Department (Department) Reg. § 403.0.

[3] The required size of the fire suppression water line related to sufficiency for fire safety regulation purposes.  It had no bearing on whether a meter pit was required.

of the fire suppression water line size requirement in Aqueduct's permit was irrelevant to the Department's meter pit requirement.

Moreover, Developer's assertion is belied by the emails discussed above, in which the Department clearly stated the meter pit requirement, and Developer, after mentioning only the change to the fire suppression water line size, stated "[e]verything else is consistent." R.R. at 158a. Developer made no mention of amending the meter pit requirement. *See id.*; *see also* N.T. at 19 (Developer's email to the Department referred to amending the permit for fire suppression water line to the sprinkler system).

The Department did not immediately approve the requested amendment from a four-inch fire suppression water line to a two-inch line. Nevertheless, in April 2017, a clerk in the Department issued plumbing permits for the Project. N.T. at 14. Of significance here, those permits did not indicate any change to the meter pit and backflow prevention requirements; to the contrary, the plumbing permit for the portion of the system connecting the townhouses to the City's water main specifically stated, in pertinent part, "Meter Pit Required: Yes."[4] R.R. at 90a; N.T. at 32-33.

Despite the lack of formal approval for the change to a two-inch water line, Developer moved forward with construction of the Project, including the plumbing installation, using the two-inch fire suppression water line, ostensibly in reliance on the plumbing permits. N.T. at 10. Moreover, although the Department had not

---

[4] A *separate* plumbing permit was issued to Aqueduct Fire Protection Systems LLC (Aqueduct) relating to the Project's fire suppression line and sprinkler system. *See* R.R. at 87a. It was the Aqueduct permit, not the permits for the plumbing system, that stated no meter pit was required. *Id.* In other words, no separate meter pit was required in relation to the fire suppression system, which is not at issue here. Notably, even one of Aqueduct's principals, who testified *on behalf of Developer*, stated it was his understanding that a meter pit is required in the City any time there is a private main connecting to the City's main, as is the case in the Project. N.T. at 44-47.

approved (and the record does not establish that Developer ever requested) any amendment to the requirements for the meter pit and backflow prevention set forth in the pre-permit applications, Developer did not install a meter pit with backflow prevention. Instead, Developer installed an individual backflow prevention device in each townhouse, leaving about 90 feet of water line between the townhouses and the public water main in the street potentially unprotected from backflow, and exposing the public water supply to potential contamination from backflow. *Id.* at 15-18.

The Department refused to install individual water meters at the townhouses in the Project because of Developer's noncompliance with the meter pit and backflow prevention requirements. Water service to the townhouses was therefore unmetered. *Id.* at 69, 74-75.

Nonetheless, Developer sold the townhouses beginning in September 2017. *Id.* at 23. In October 2017, the Department issued a Complaint Notice to Developer, charging theft of services based on unmetered use of water at the Project. R.R. at 99a. Subsequently, in November 2017, the Department finally approved Developer's requested permit amendment reducing the size of the Project's fire suppression water line from four inches to two inches. *Id.* at 92a-97a. No other changes were approved. *See id.* Specifically, the Department never approved elimination of the meter pit with backflow prevention. *See* N.T. at 32 (amended Project plan still required a meter pit). Significantly, the amended permits were issued to Aqueduct, not to the Project's plumbing contractor. R.R. at 92a-97a.

Developer appealed the Complaint Notice to the Board, and the Board held a hearing. Relevant here, Developer offered no evidence that its permit amendment request included elimination of the meter pit containing backflow prevention.

4

Developer contended the Department lacked authority to require a meter pit. Section 400.5(c) of the Department's regulations refers to "meter boxes." R.R. at 133a (citing Department Reg. § 400.5(c)).[5] Developer argued a meter pit and a meter box are different things, and a meter box is simply an individual water meter.[6] The City, however, offered testimony that the terms "meter pit" and "meter box" are synonymous. N.T. at 25-28.

Developer asserted that even if a meter pit was required, individual meters and backflow prevention at the individual townhouses were better and more practical than a meter pit. N.T. at 56-59, 61-62. Developer also posited that digging up the completed driveway for installation of a meter pit would be prohibitively expensive for Developer and disruptive to the townhouses' residents. N.T. at 70-72. Developer also contended it would be impossible to fit a meter pit in the required location after completion of construction, because of the intervening installation of other utility lines under the driveway. N.T. at 53-54. Importantly, however, Developer admitted it had not made any effort to determine exactly what would be required and what the cost and logistics would actually be. N.T. at 72-73.

The City countered that the meter pit requirement was reasonable and necessary to fully protect the City water supply from potential backflow contamination in the event of damage to the water lines between the individual townhouses and the water main in the street. N.T. at 15-18. The City offered testimony that meter pits could be customized in many shapes and sizes and could

[5] The Philadelphia Code authorizes City agencies to promulgate regulations. Philadelphia, Pa., Municipal Code art. 1, § 1-104(4) (2016).

[6] Notably, however, Department Regulation § 400.5(c) mentions both "meter boxes" and "individual meters," and the context suggests they are two different things. As discussed further below, Developer offered no explanation why both terms would be used in different references within the same regulation if those terms were interchangeable.

be adapted to fit in the remaining available space under the Project's driveway. N.T. at 81-82. The City posited that the driveway excavation and installation of the meter pit could be accomplished in not more than two or three days and would not require displacing the townhouses' residents. *Id.*

The Board credited the City's evidence over that of Developer. The Board concluded a meter pit was required and upheld the Department's Complaint Notice. The trial court, which reviewed the Board's record without receiving additional evidence,[7] affirmed the Board's decision. This appeal by Developer followed.

## II. Issues on Appeal[8]

Developer asserts four arguments on appeal to this Court, which we reorganize slightly for clarity as follows:

1.      There was no City Code provision or regulation that clearly required installation of a meter pit, so the City had no authority to impose that requirement.

2.      The plumbing permits did not require a meter pit, so Developer acquired a vested right to construct the Project without a meter pit.

3.      The City acted unreasonably in requiring a meter pit when there was a viable and less intrusive solution to the absence of the meter pit at the Project as constructed.

---

[7] Because the trial court did not receive additional evidence beyond the record made before the Board, the trial court's review was limited to determining whether there was a violation of constitutional rights, an error of law, improper proceedings before the Board, or a lack of substantial evidence in support of any finding of fact made by the Board and necessary to support its adjudication. 2 Pa.C.S. § 754(b).

[8] Where the trial court has not taken additional evidence, our review of the Board's determination is limited to determining whether constitutional rights were violated, whether the decision was rendered in accordance with the law, and whether necessary findings of fact were supported by substantial evidence. *Flanders v. Ford City Borough Council*, 986 A.2d 964, 969 n.2 (Pa. Cmwlth. 2009).

4.     The City's insistence on installing a meter pit after completion of construction was overly punitive; compliance after completion of construction would be impracticable and prohibitively expensive and would unfairly displace the individual townhouse owners.

## III. Discussion

### A. City's Authority to Require a Meter Pit

Developer argues the City had no legal authority to require a meter pit for the Project. Developer does not dispute that Section 400.5(c) of the Department's regulations requires meter boxes. *See* Department Reg. § 400.5(c). However, Developer insists a meter pit and a meter box are not the same thing. Developer suggests that a meter box is simply the individual meter installed at each building. We discern no merit in this argument.

The City offered testimony that the terms "meter pit" and "meter box" are interchangeable. N.T. at 25-28. The Department's Cross Connection Control Manual, Standard Specifications for Prevention of Water Contamination (Department Manual), providing requirements for plumbing construction, repeatedly refers to meter pits, including installation diagrams clearly demonstrating that meter pits are *not* individual meters. *See* R.R. at 36a, 38a, 42a-45a. The City Code requires backflow containment conforming to the Department Manual's specifications. *See* Philadelphia, Pa., Municipal Code art. 4, § P-608.1.2 (2016).

Developer opposed the City's evidence before the Board by arguing that a meter box is simply an individual meter. However, the regulation requiring meter boxes also refers to individual meters. The regulation allows connection to the City's water main only after applicable conditions are met, including:

> (c) Prior to installation, the Department has approved the locations of the meter boxes so that they comply with the Department's Regulations

7

and current standards for collecting meter data. At no time will approval be granted if the distance between the first individual meter installed after the main connection and the water main is greater than thirty-five (35) feet.

Philadelphia, Pa., Municipal Code art. 4, § P-608.1.2(c). Developer fails to explain why the same provision would use both terms separately if they referred to the same thing. Moreover, the City offered express testimony that a water meter and a meter box are not the same thing. N.T. at 25.[9]

Developer also points to a separate provision, Department Regulation § 401.3(b), which mentions "meter pits," as demonstrating that the Department knew how to use the term "meter pit" when it wanted to do so.[10] However, the Department's use of "meter pit" in a separate regulation can equally be viewed as demonstrating the interchangeability of the terms "meter pit" and "meter box."

Ultimately, the Board credited the City's evidence over Developer's opposing argument. There was substantial evidence to support the Board's finding. Therefore, the trial court properly upheld it.

---

[9] In this regard, Developer also suggests that (1) it satisfied the regulation because some or all of the individual meters would be less than 35 feet from the City's water main, and (2) use of individual meters would meet all the Department's requirements. Those arguments are not well taken. The locations and installation of the individual meters are separate from the meter pit requirement, not an alternative to it.

[10] Developer also argues no meter pit was required for the Project because Department Regulation § 401.3(b) applies only where a building is more than 35 feet from the City's water main. Developer argues the Project is flush with the street and therefore less than 35 feet from the water main. However, Developer fails to cite any record support for that contention. Further, the record suggests the farthest individual meter in the Project is 90 feet from the street. N.T. at 15-18, 66-67. Moreover, nothing in Section 401.3(b) prevents the City from imposing meter pit requirements based on other regulations, including the Department's Cross Connection Control Manual, Standard Specifications for Prevention of Water Contamination, which contains repeated references to meter pits. *See* R.R. at 36a, 38a, 42a-45a.

In a related sub-argument, Developer contends the Department's Complaint Notice did not comply with the requirements of Sections 502.1 and 502.2 of the City's Administrative Subcode,[11] Philadelphia, Pa., Municipal Code art. 4, §§ A-502.1 and A-502.2 (2016). Specifically, Developer asserts the Complaint Notice was inadequate because it failed to describe the alleged violation, order a correction, and prescribe a time limit of not more than 35 days for the correction. This argument lacks merit.

The Complaint Notice form has boxes to be checked for applicable violations. R.R. at 99a. A box was checked for "Meter Needed." *Id.* In addition, the "Other" box was checked, providing a phone number to contact and stating "(ALL UNITS IN VIOLATION!!) A-F"[12] and "THEFT OF SERVICE." *Id.* (parentheses and underlining in original). This was sufficient to place Developer on notice of the nature of the Department's complaint. Indeed, Developer does not contend it was ignorant of the basis of the Complaint Notice. Notably, Developer did not assert any defect in the Complaint Notice as a basis for its initial appeal to the Board. *See* Original Record, Item #13 at 72.

The Complaint Notice was dated October 31, 2017 and stated a water shutoff date of November 4, 2017, five days later, unless Developer corrected the violation *or* made an appointment with the Department before that time. R.R. at 99a. The time limit complied with the City Code's requirement to provide a time limit not to

[11] The Philadelphia Code includes Administrative, Building, Electrical, Existing Building, Energy Conservation, Fire, Fuel Gas, Mechanical, Plumbing, Performance for Buildings and Facilities, Property Maintenance, and Residential Subcodes. Philadelphia, Pa., Municipal Code art. 4, § 4-100.0 (2016).

[12] A-F are the designations used for the six individual townhouses in the Project.

exceed 35 days. Developer does not argue that the five-day period to call for an appointment concerning the violation was unreasonable.

Moreover, it is undisputed that water service to the Project has not been shut off, and the residents are continuing to receive unmetered water service during the pendency of this matter. Even assuming that there were inadequacies in the Complaint Notice, Developer has not pointed to any resulting prejudice.

The trial court correctly affirmed the Board's determination that the Department was authorized to require a meter pit for the Project's plumbing system.

## B. Vested Right

The Department presented testimony before the Board that the plumbing permits issued in April 2017, before official approval of the permit amendment request, were issued in error by a clerk. N.T. at 14. Developer argues that it nonetheless acquired a vested right in the permits. We disagree.

In general, a municipal permit issued in violation of the law or under a mistake of fact confers no vested right, and the permit may be revoked regardless of the permittee's reliance on it. *In re Appeal of Broad Mountain Dev. Co., LLC*, 17 A.3d 434, 444 (Pa. Cmwth. 2011) (citing *Peluso v. Kistner*, 970 A.2d 530 (Pa. Cmwlth. 2009)). A permittee generally acts at its peril in making any expenditures in reliance on an improperly issued permit. *Broad Mountain*, 17 A.3d at 444 (citing *Peluso*).

Nonetheless, in certain circumstances, a vested right can be acquired after a permit is issued incorrectly or in error. *Broad Mountain*, 17 A.3d at 444 (citing *Dep't of Envtl. Res. v. Flynn*, 344 A.2d 720 (Pa. Cmwlth. 1975)). To determine whether the permittee has acquired a vested right to rely on a permit, a court will weigh five factors: (1) due diligence of the permittee in attempting to comply with the law; (2) good faith by the permittee throughout the proceedings; (3) the

permittee's expenditure of substantial unrecoverable funds; (4) the expiration of the time for appealing the permit; and (5) insufficient evidence that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit. *Broad Mountain*, 17 A.3d at 444-45 (citing *Petrosky v. Zoning Hearing Bd. of Twp. of Upper Chichester*, 402 A.2d 1385, 1388 (Pa. 1979)).

Here, Developer argues it met all five factors for acquisition of a vested right. We disagree that Developer satisfied any of the five factors.

Regarding the first two factors, Developer's conduct showed neither due diligence in attempting to comply with applicable law nor good faith throughout construction of the Project. Developer's plumbing contractor was clearly aware at the time he filed the plumbing permit applications that the meter pit with backflow prevention would be required, because he answered "Yes" to both requirements on his permit applications. R.R. at 156a-57a. Moreover, the Department confirmed the meter pit requirement in an email a week after the plumbing permit applications were filed. R.R. at 159a. Developer's site plan for the Project's fire service main also showed the meter pit. R.R. at 155a. The plumbing permit issued in April 2017 for the portion of the Project's plumbing system where the meter pit was to be placed expressly stated, "Meter Pit Required: Yes." R.R. at 90a. The record does not support Developer's averment that it filed a request to amend the plumbing permit application to eliminate the meter pit.

Despite its demonstrated awareness of the meter pit requirement, Developer made a conscious decision to proceed with construction of the Project without approval by the City for elimination of the meter pit. Therefore, the first two factors, due diligence and good faith, weigh against a vested right.

11

Regarding the third factor, the City does not appear to dispute that Developer expended substantial funds in constructing the Project. However, that expenditure was not reasonable in the absence of approval to eliminate the required meter pit. The plumbing permit for the line from the City main to the townhouses expressly stated, "Meter Pit Required: Yes." R.R. at 90a. The amended permits issued in November 2017 did not relate to the portion of the plumbing system where the meter pit was to be; those permits were issued to Aqueduct in relation to the size of the fire suppression water line. This factor also weighs against Developer's acquisition of a vested right.

The fourth factor, expiration of the time to appeal issuance of the permits, also does not support a vested right. Developer presented no evidence or authority to support its suggestion that the incorrectly issued plumbing permits excused the meter pit requirement. To the contrary, as explained in the preceding paragraphs, the applicable plumbing permit expressly stated a meter pit *was* required. R.R. at 90a. The Department did not reverse its position to Developer's detriment after the expiration of the appeal period from issuance of the permits, because the Department never approved elimination of the meter pit in the first place, and the permits did not indicate any such approval.

Finally, regarding the fifth factor, the record contains substantial evidence that the public health, safety, or welfare would be adversely affected by allowing the plumbing system of the Project to remain as constructed, without a meter pit equipped with backflow prevention. Backflow prevention is necessary in order to protect the public water supply from contamination in the event of damage or contamination of an individual water line. *See* 25 Pa. Code § 109.709; Department Reg. § 403.0. Developer avers that it installed individual backflow prevention in

12

each of the townhouses, but the Department presented testimony that the absence of a meter pit with backflow prevention between the townhouses and the City water main left about 90 feet of water line potentially unprotected from backflow, which in turn exposed the public water supply to potential contamination from backflow occurring between the individual backflow prevention devices and the water main. N.T. at 15-18. The Board was entitled to credit that evidence, and the trial court properly affirmed the Board's finding.

As the foregoing analysis demonstrates, all five *Petrosky* factors weigh against acquisition of a vested right. The trial court correctly found Developer did not acquire a vested right to construct the Project's plumbing system without a meter pit.

### C. **Alternative Metering and Backflow Prevention**

Developer argues that even if it did violate the Department's regulations by failing to install a meter pit containing backflow prevention, the Board should have sustained Developer's appeal from the Complaint Notice because Developer proposed an equivalent form of construction, *i.e.*, the installation of individual meters with backflow protection in the townhouses. A permittee's proposal of equivalent alternative construction is an allowable basis for an appeal to the Board. Philadelphia, Pa., Municipal Code art. 4, § A-801.3(3) (2016). Nonetheless, Developer's argument is without merit.

Developer offered testimony from its plumbing contractor that individual meters in the townhouses were preferable to a meter pit because they were easier to access and maintain. N.T. at 56-59, 61-62. However, as explained in the previous section, the City presented testimony that use of individual backflow prevention in each townhouse, rather than a meter pit placing backflow prevention closer to the

13

water main, left a 90-foot section of the Project's plumbing without backflow prevention and the City's water supply vulnerable to backflow contamination. N.T. at 15-18. The Board evidently credited the City's evidence over Developer's evidence on that issue and concluded Developer's proposal was not equivalent to the City's required placement of the meter pit. The trial court properly upheld the Board's finding of fact in that regard, which was supported by substantial evidence.

### D. Punitive Character of Meter Pit Requirement

Finally, Developer suggests that requiring installation of a meter pit with backflow prevention, after construction of the Project has already been completed, will have "catastrophic consequences" so extreme as to constitute an unconstitutionally cruel and unusual punishment.[13]  Br. of Appellant at 27.  This argument is not well taken.

Contrary to Developer's argument, the City's proposed remedy of mandating installation of the required meter pit is not punitive.  As explained above, the Project's plumbing system as presently constructed exposes the City's water main to potential backflow contamination, thus posing a public health hazard.  The City is acting properly in requiring Developer to correct that condition.

Developer nonetheless argues installing a meter pit will be prohibitively expensive, so difficult as to be virtually impossible, and an unfair burden on the townhouse owners, who will be constructively evicted from their homes during the installation process.  Developer contends the Project's common driveway will have to be excavated for a lengthy period, the space that the meter pit would have occupied is now filled by other utility lines that may not be movable, and the excavation process will expose Developer to possible lawsuits by disgruntled

---

[13] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.

14

townhouse owners. N.T. at 70-72. However, Developer admitted it never looked into the requirements or cost involved in remedying its failure to install the meter pit during construction. N.T. at 72-73.

The City offered evidence that the meter pit can be whatever size and shape is necessary to fit in the available space, and the entire excavation and installation process can likely be completed in no more than two to three days, without displacing the townhouse owners. N.T. at 81-82. The Board clearly credited the City's evidence over Developer's, as it was entitled to do. The trial court correctly upheld the Board's finding of fact on this issue.

## IV. Conclusion

Based on the foregoing analysis, we affirm the decision of the trial court.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                                :
      v.                   : No. 1292 C.D. 2019
                                :
1208 SUSQ LLC,          :
                Appellant    :

# **O R D E R**

AND NOW, this 9th day of July, 2020, the order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
ELLEN CEISLER, Judge