# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Lodge, Cathy Lodge,   :
Nolan Vance, Brenda Vance,   :
Richard Barrie, and Irene Barrie,   :
      Appellants   :
  :
  :   No. 813 C.D. 2020
     v.   :
  :   Argued: May 10, 2021
Robinson Township Zoning Hearing   :
Board   :
  :
     v.   :
  :
Robinson Township, Range Resources -  :
Appalachia, LLC, and Moore Park, L.P.  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge[1]


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: August 4, 2022


      Christopher Lodge, Cathy Lodge (Lodges), Nolan Vance, Brenda Vance (Vances), Richard Barrie, and Irene Barrie (Barries) (collectively, Objectors) appeal from the July 16, 2020 order of the Court of Common Pleas of Washington County

---

[1] This case was argued before a panel of the Court that included Judge Crompton. Judge Crompton's service with this Court ended on January 2, 2022, before the Court reached a decision in this matter. Accordingly, Judge Ceisler was substituted for Judge Crompton as a panel member in this matter and considered the matter as submitted on the briefs.

(trial court), which dismissed their substantive validity challenge to Robinson Township (Township) Ordinance 1-2014[2] for lack of standing.

## I. Factual and Procedural Background

### i. History of Ordinance

On May 8, 2006, the Board of Supervisors of Robinson Township (Board) enacted a comprehensive Zoning Ordinance (2006 Ordinance). The 2006 Ordinance provided that oil and gas drilling "may be approved" as a conditional use in all zoning districts, except the Floodplain Overlay District. (Reproduced Record (R.R.) at 1237a.) The 2006 Ordinance articulated standards that included a drilling setback distance of 50 feet from property lines, a prohibition of drilling within 300 feet of a residence, a requirement that all drilling activities conform to an "Environmental Plan" and such other factors and criteria established by the Township Zoning Hearing Board (ZHB).

On December 23, 2013, departing members of the Board adopted Ordinances 3-2013 and 4-2013 (collectively, 2013 Ordinances). Ordinance 3-2013 designated "Oil and Gas Operations and Development" to be a use by "special exception." (R.R. at 1257a-61a, 1868a-69a.) The 2013 Ordinances also created an Interchange Business Development (IBD) District to provide for high impact land uses that require significant infrastructure. (R.R. at 782a.) Ordinance 3-2013 provided that Oil and Gas Operations and Development was a use by special exception in an IBD District.

On August 7, 2014, a newly elected majority of the Board amended the Township Zoning Ordinance and zoning map and adopted Ordinance 1-2014, the challenged ordinance at issue here. According to Ordinance 1-2014, Oil and Gas Well

---

[2] Township of Robinson, Washington County Ordinance No. 1-2014 (Ordinance 1-2014), adopted August 7, 2014, effective August 12, 2014.

2

Site Development, Oil and Gas Sub-Surface Facilities and Activities and Natural Gas Compressor Stations are "permitted principal uses" in the IBD District, Agricultural, Rural Residential, and Industrial Districts. (R.R. at 1286a-336a.) Pursuant to Ordinance 1-2014, Oil and Gas Well-Site Development is defined to include: well location, preparation, construction, drilling hydraulic fracturing, seismic operations, and water or fluid storage operations. *Id*. Ordinance 1-2014 amended the "Performance Standards" for the IBD District. Specifically, a "65 dBA" maximum noise level for the IBD District was enacted. *Id*. Ordinance 1-2014 further amended the 2013 Ordinances to allow "oil and gas development" as permitted by conditional use in the Special Conservation and Commercial Districts and not permitted in Single Family Residential and General Residential Districts. *Id*.

### ii. First Substantive Validity Challenge

On September 2, 2014, based in large part on the Supreme Court's decision in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013),[3] Objectors submitted a pre-enforcement, substantive validity challenge to the ZHB pursuant to section 909.1(a) of the Pennsylvania Municipalities Planning Code (MPC).[4] Objectors argued that Ordinance 1-2014 is invalid because it does not promote the public health,

---

[3] In *Robinson Township*, the Supreme Court held that a single, statewide zoning standard for oil and gas operations in every zoning district in the Commonwealth, as specified in former section 3304 of Act 13, *formerly* 58 Pa.C.S. §3304, violated Article I, Section 27 of the Pennsylvania Constitution (Environmental Rights Amendment), Pa. Const. art. I, § 27. The Supreme Court concluded that statewide land use standards altered "existing expectations of communities and property owners and substantially diminished natural and esthetic values of the local environment[.]" 83 A.3d at 979.

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1(a). A validity challenge generally attacks zoning on substantive due process grounds, *i.e.*, whether an ordinance is substantially related to a legitimate interest. *Plaxton v. Lycoming County Zoning Hearing Board*, 986 A.2d 199, 205 (Pa. Cmwlth. 2009).

safety and welfare, fails to satisfy the constitutional and statutory mandate that zoning laws promote and protect the preservation of the natural, scenic and historic values of the environment under the Environmental Rights Amendment.[5] They further alleged that Ordinance 1-2014 violates both the federal due process protections for property owners and State Constitutional protections regarding private property (Pa. Const. art. I, §1) because it fails to conserve and maintain the constitutionally protected aspects of the public environment and of a certain quality of life for all the people. (R.R. at 73a.)

### iii. Moore Park Well Pad

On September 15, 2014, shortly after Objectors' substantive validity challenge was filed, the Township, pursuant to Ordinance 1-2014, approved the issuance of a zoning permit application for Range Resources. The permit application involved the construction of the "Moore Park well pad," a natural gas drilling and production site on property located next to U.S. Route 22, a four-lane highway. (Finding of Fact (F.F.) Nos. 4-5.) The Moore Park well pad is located in an IBD District. Under Ordinance 1-2014, such use is now a use permitted by right. The Moore Park well pad and its associated pig launcher is located approximately 2,725 feet from the Vance property, approximately 1.17 miles from the Barrie property, and approximately 2.22 miles from the Lodge property. (R.R. at 1342a, 1579a.)

### iv. Hearing before the Zoning Hearing Board

The ZHB conducted a hearing on October 30, 2014, concerning Objectors' substantive validity challenge. During the hearing, Range Resources moved

---

[5] The Environmental Rights Amendment provides the people of Pennsylvania with the "right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment." The Environmental Rights Amendment further requires the Commonwealth and local governments, as trustees of Pennsylvania's public resources, to "conserve and maintain them for the benefit of all the people." Pa. Const. art. I, §27.

4

to dismiss the challenge for lack of standing and ripeness. The ZHB allowed the parties to file legal briefs and took the matter under advisement.

### v. Second Substantive Validity Challenge

While their first substantive validity challenge was still pending, Objectors submitted a second substantive validity challenge on December 17, 2014, asserting claims as applied to the Township's approval of Range Resources' Moore Park well pad. The ZHB held a hearing on January 6, 2015, concerning the first and second validity challenges. Objectors argued that they are longtime residents of Robinson Township who have enjoyed the Township's rural, residential, and agricultural character, and the assurances that such character would continue as provided in the zoning ordinance in the districts in which they live. Objectors argued that they have children, grandchildren, and animals who could be exposed to industrial noise and traffic and/or pollution from the Moore Park well pad and related operations. The Vances argued that, in reliance on the stated purposes of the Special Conservation zoning district in which they live, they made a significant investment in, recently completed construction on, and moved into their new home at 9812 Steubenville Pike. They did not expect they would be living next door to an oil and gas well pad and other related industrial facilities and activities. The Vances argued that they have reasonable concerns that the construction, development, and operation of the Moore Park well pad and other nearby oil and gas industrial facilities will affect their health, property values, aesthetic values, and way of life.

The Barries argued that they have lived at their residence for 39 years and that during this time, they have enjoyed the rural, residential, and agricultural nature of Robinson Township and have come to rely on that way of life. The Barries complained that they did not expect to live near industrial operations. They feared that because the

Moore Park well pad is less than a mile and a half from their property, it is likely that the actual site operations and horizontal wellbores will be much closer. They asserted that in the last few years, they began to experience the construction and operation of nearby oil and gas facilities and operations, including neighboring well pads and a pipeline. These new impacts have affected the Barries' way of life, particularly due to the related traffic, noises, emissions, and concerns for their well water.

On January 21, 2015, the ZHB issued two decisions, dismissing Objectors' first and second substantive validity challenges. The ZHB dismissed the first validity challenge because Objectors did not allege that the use or development of their properties were prohibited or restricted by Ordinance 1-2014 and they also failed to establish that they had standing because they only presented generalized interests common to the entire Township's population, and their interests are neither substantial nor immediate. With respect to the second challenge, the ZHB dismissed this challenge pursuant to section 916.1(i) of the MPC, 53 P.S. §10916.1(i),[6] because it was filed while the first substantive validity challenge had not been finally determined or withdrawn.

On February 20, 2015, Objectors filed a Notice of Land Use Appeal in the trial court. Range Resources and others intervened in support of the Ordinance. (R.R. at 86a-92a.) Upon review of the record of proceedings before the ZHB, the trial court

---

[6] Section 916.1(i) of the MPC provides, in relevant part:

> (i) A landowner who has challenged on substantive grounds the validity of a zoning ordinance or map . . . shall not submit any additional substantive challenges involving the same parcel, group of parcels or part thereof until such time as the status of the landowner's original challenge has been finally determined or withdrawn . . . .

53 P.S. §10916.1(i), added by the Act of December 21, 1988, P.L. 1329.

concluded that the ZHB record was insufficiently developed on the issue of standing. Specifically, on matters relevant to whether any Objectors would be impacted by activities at the Moore Park well pad the evidentiary record was incomplete and critical findings including credibility determinations were lacking. Accordingly, the trial court scheduled a hearing to address the issue of Objectors' standing. (R.R. at 653a.) Prior to that future hearing, the parties agreed that the issue of Objectors' standing should be bifurcated and determined first.

In advance of the hearing, Range Resources presented a motion, and the trial court entered an order for a view of the Moore Park well pad and the area in the vicinity of the Vance Objectors' residence, which at over a half mile away, is the closest Objector residence to the well pad. (R.R. at 705a-16a, 719a-20a.) Range Resources requested the site view under Section 908(8) of the MPC, 53 P.S. §10908(8), which authorizes a zoning board or hearing officer to inspect a site or its surroundings with any party or his representative if all parties are present or given an opportunity to do so. Range Resources argued that even though the ZHB was not inspecting the site, it was acceptable for the trial court to do so because the trial court was serving as a trier of fact. Moreover, Range Resources stated that it would take responsibility for costs and expenses associated with the view. Objectors did not file a written response to Range Resources' motion for a view or present their own motion for a view of any properties during the five-year plus pendency of the validity challenge before the trial court. On December 20, 2019, the trial court, joined by all counsel of record, conducted the view of the Moore Park well pad and the Vance Objectors' property. (R.R. at 721a-25a.) The trial court held two days of hearings on January 24 and January 27, 2020, at which time all parties were given the opportunity to present and cross-examine

witnesses and introduce and object to exhibits. (R.R. at 727a-1234a.) No objections were made on the record to the site view at this hearing. (R.R. at 727a-1234a.)

### vi. Trial Court's Findings

On July 16, 2020, the trial court issued its findings, holding that Objectors lacked standing to pursue the validity challenge.[7] In essence, the trial court found that Objectors had failed to meet their burden to establish that any of their concerns and alleged adverse impacts raised were caused by the application of the challenged Ordinance to the permit application for the Moore Park well pad. (R.R. at 1886a.) The court concluded that Objectors failed to show how the passage of Ordinance 1-2014 or the issuance of a permit for the Moore Park well pad resulted in "concretely demonstrable harm to them or their interests." (Conclusions of Law (C.L.) No. 127.) Specifically, the trial court held that Objectors failed to demonstrate a present impact to their interests, and that the complained of noise, vibrations, odors, and air pollution could be attributed to a variety of sources and causes which existed prior to the passing of Ordinance 1-2014 and the permit application for the Moore Park well pad. (C.L. No. 129.) The court held that there was no causal connection between the adoption of Ordinance 1-2014 and the impacts alleged by Objectors and that the evidence did "not credibly demonstrate" that Objectors suffered any direct, substantial, and immediate harms caused by the Moore Park well pad. (C.L. Nos. 131-132.) The trial court also held that the evidence did "not credibly demonstrate" that Objectors suffered any "greater direct, substantial[,] and immediate deleterious impacts from unconventional

---

[7] The trial court dismissed Objectors' appeal of the Second Validity Challenge on July 5, 2019. (R.R. at 653a.) Objectors did not appeal the trial court's decision on the Second Validity Challenge (raising an "as-applied" claim) to this Court. Therefore, our analysis of the standing issue pertains to Objectors' standing to bring a facial validity challenge to Ordinance 1-2014, and we do not offer any opinion as to Objectors' standing to bring an "as-applied" claim.

8

oil and natural gas drilling than those they encountered prior to the passage of Ordinance 1-2014." (C.L. No. 133.) The trial court made the following findings of fact, determining them to be "credible and reliable."

118. This trial court finds the Objectors' contention, that they **suffered actual harm from facilities authorized by Ordinance 1-2014 to be speculative, unpersuasive and unsupported** by the hearing record as a whole.

. . .

127. The Objectors have not shown **how the passage of Ordinance 1-2014 or the issuance of a permit for the Moore Park [well pad] resulted in concretely demonstrable harm to them or their interests**.

. . .

129. The Objectors have not demonstrated a present impact to their interests. The hearing evidence established that many of the adverse effects they complained of such as noise, vibrations, odors, air pollution, were due to a variety of sources and **existed prior to the passage of Ordinance 1-2014** and the permit application for the Moore Park [well pad]. The hearing evidence is unconvincing that the passage of Ordinance 1-2014 or the Moore Park [well pad] permit immediately impacted the Objectors' interests.

. . .

131. The Objectors **all live in excess of one-half mile from the Moore Park [well pad].** Objectors **did not prove a causal connection between the Township's adoption of Ordinance 1-2014 and the impacts the Objectors alleged**.

132. The evidence does not credibly demonstrate that the Objectors suffered direct, substantial and immediate deleterious impacts **caused by the Moore Park [well pad]** operations.

133. Similarly, **the evidence does not credibly demonstrate that the Objectors suffered any greater direct, substantial and immediate deleterious impacts from unconventional**

9

**oil and natural gas drilling than those they encountered prior to the passage of Ordinance 1-2014**.

(Trial ct. op., 07/17/2020, Findings of Fact (F.F.) Nos. 118, 127, 129, 131-33.) (Emphasis added).

### a. Christopher and Cathy Lodge

Christopher and Cathy Lodge reside at 257 Meinrad Drive in the Township, approximately 2.22 miles away from the Moore Park well pad and did not testify or appear at the hearings before the trial court. (R.R. at 1870a.) The trial court found that:

> 36. No testimony or evidence was presented to credibly and persuasively establish that Christopher and Cathy Lodge have suffered any consequences or identifiable harm due to the issuance of a permit for the operation of the Moore Park [well pad].
>
> 37. No testimony or evidence was presented to credibly and persuasively establish that Christopher and Cathy Lodge possess a discernable interest that surpasses the abstract interest "of all citizens in procuring obedience to the law."

(Trial ct. op., 07/17/2020, F.F. Nos. 36-37.)

### b. Richard and Irene Barrie

Richard and Irene Barrie reside at 5215 Maple Grove Road in the Township's R-1A Rural Residential Zoning District, 1.17 miles away from the Moore Park well pad. (R.R. at 1871a.) Mrs. Barrie testified that beginning in December of 2012, she maintained a journal in which she recorded her sensory experiences at her property caused by what she believed to be oil and gas development activities. (R.R. at 1872a.) The trial court found that Mrs. Barrie's journal entries predated the application and issuance of a permit for the Moore Park well pad, and/or coincided with unrelated construction projects occurring near the Barrie residence, including (1)

the Kendall Station Well Site, which is located much closer to the Barrie property than the Moore Park well pad and was not approved under the challenged Ordinance, (2) the Kresic well pad, developed prior to adoption of the Ordinance and approval of the Moore Park well pad, (3) the Richard Moore well pad, located in Smith Township, and (4) certain unrelated pipeline work. (R.R. at 1871a-74a.) Mrs. Barrie conceded on cross-examination that she could not directly attribute the impacts she experienced to the Moore Park well pad and that she could not see the Moore Park well pad from her property, but that she could hear air traffic from the Pittsburgh International Airport and road traffic from U.S. Route 22. (R.R. at 1873a-74a.) Mrs. Barrie admitted that she could not differentiate between the various noises she allegedly heard on her property. (R.R. at 1874a.) The trial court found that Mrs. Barrie's testimony regarding the diminution of her property's value due to oil and gas operations was "speculative and not persuasive." (R.R. at 1874a.)

### c. Nolan and Brenda Vance

Nolan and Brenda Vance reside at 9812 Old Steubenville Pike Road, approximately 2,725 feet from the Moore Park well pad in the Township's Special Conservation Zoning District. (R.R. at 1875a.) U.S. Route 22, which hundreds of trucks traverse daily, separates the Vances' current residence from the Moore Park Well Pad. (R.R. at 1875a, 1876a.) Mrs. Vance contended during her testimony that the activity at the Moore Park well pad disrupted her sleep, created constant noise, disturbing vibrations, mechanical odors, and increased levels of truck traffic. (R.R. at 1876a.) The trial court made the following findings concerning Mrs. Vance's standing:

> 72. Mrs. Vance acknowledged that the Moore Park [well p]ad is not visible from her home.

> 73. She indicated that she was uncertain if trucks going to and from the Moore Park [well pad] passed her home.

11

74. Mrs. Vance conceded that during concert season for the Key Bank Pavilion there is an increase in traffic on U.S. 22, more vehicles passing her home on weekends in order to avoid back-ups on U.S. 22 and more vehicle fumes.

. . .

76. She could not recall the last time she smelled an odor from the Moore Park [w]ell [p]ad.

77. She recalled that noise was most constant in April of 2015 and March of 2016.

78. Most recently in December of 2019, she heard "sounds" but is unable to attribute that noise to the Moore Park [well p]ad.

79. She recalled one instance of "flaring." She indicated she had a photograph to confirm the incident but such evidence was not offered during the hearings on this challenge.

80. Mrs. Vance testified to having discolored water from her well. She attributed that occurrence to National Fuel's replacing of pipelines. On that instance, she contacted the Pennsylvania Department of Environmental Protection. The DEP performed testing and found chemicals from fracking, but could not conclude that the chemicals came from the Moore Park [w]ell [p]ad.

81. She acknowledged that her property is separated from the Smith Township border by a small creek.

82. This trial court finds that Mrs. Vance's recollection of high noise levels, vibrations, and "mechanical odors" is credible.

83. This trial court finds that Mrs. Vance's conclusion that the high noise levels, vibrations and mechanical odors are attributable to the Moore Park [well pad] was not proven.

(Trial ct. op., 07/17/2020, F.F. Nos. 72-74, 76-83.)

#### d. Other Testimony

The Township called two residents, Bonnie Moore, a neighbor of the Vances, and John Campbell, a Township resident and owner of property adjacent to the Moore Park well pad. (R.R. at 1878a, 1881a.) Ms. Moore testified that she had never seen, felt or smelled the impacts reported by Mrs. Vance. (R.R. at 1878a.) Mr. Campbell, a longtime resident and farmer, testified that the site of the Moore Park well pad is unusable for farming due to the impact of the expansion of U.S. Route 22 into a four-lane highway approximately 50 to 55 years ago. (R.R. at 1193a-97a.) His farming activities on the property adjacent to the Moore Park well pad include mowing, conditioning, raking, and baling, which require equipment that emits both noise and fumes, a normal byproduct of agricultural activity. (R.R. at 1646a.) Additionally, Mr. Campbell testified that from his property he does not hear noises from the Moore Park well pad, but rather hears constant noise from U.S. Route 22 and the nearby outdoor amphitheater during concert season. (R.R. at 1202a, 1208a.)

The trial court found Justin Welker, Range Resources' Water Operations Manager, to be credible. (R.R. at 1879a.) Mr. Welker testified that the truck routes used to service the Moore Park well pad did not travel on portions of roads adjacent to any of Objectors' respective properties. (R.R. at 1878a.) Additionally, Mr. Welker testified that hydraulic fracturing, which necessitates higher truck use, only occurred at the Moore Park well pad during the periods from March 1, 2016, to March 21, 2016, and from August 24, 2017, to September 27, 2017. (R.R. at 1879a.) Mr. Welker testified that the Moore Park well pad is now in "permanent production," which only requires two water trucks per day, as well as three condensate trucks per week. (R.R. at 1097a-98a.) Finally, Mr. Welker testified that Range Resources does not anticipate

13

or have any drilling or hydraulic fracturing activity planned for the Moore Park well pad for the next five years. (R.R. at 1114a.)

The trial court also found credible the testimony of Range Resources' witness John R. Over, a civil engineer with K2 Engineering, that Objectors were not able to view the Moore Park well pad from their homes. (R.R. at 1879a-80a.) Mr. Over opined that Range Resources' truck traffic in the area did not degrade the level of service for the Township's roads. (R.R. at 1880a.) Mr. Over provided testimony concerning other construction projects in the Township, including the Pennsylvania Turnpike Commission's Interstate 576 Southern Beltway project, which disturbed over 450 acres of land in the Township. (R.R. at 1880a.) Mr. Over testified that the Lodge property is closer to the Interstate 576 project than it is to the Moore Park well pad and the Barrie property is equidistant to both the Interstate 576 project and the Moore Park well pad. (R.R. at 1149a-50a.)

Range Resources' witness Brent Cummings, an acoustical engineer with TruHorizon Environmental Solutions, was qualified and accepted as a sound expert by the trial court. (R.R. at 1880a). Mr. Cummings testified with respect to three studies undertaken to evaluate sound impacts associated with the Moore Park well pad. First, he reviewed and concurred with the pre-development sound impact assessment prepared by Bergmann and Associates in 2014 (2014 Sound Impact Assessment), which concluded that during drilling and hydraulic fracturing operations at the Moore Park well pad there would be no sound impact beyond 1,000 feet from the pad. (R.R. at 1882a.) Second, he oversaw a sound monitoring study conducted east of the Moore Park well pad while hydraulic fracturing operations were ongoing at the pad during the period between March 10, 2016, and March 16, 2016 (2016 Sound Monitoring Study). (R.R. at 1881a.) Mr. Cummings testified that the 2016 Sound Monitoring Study picked

14

up a significant amount of road and air traffic sound from the nearby U.S. Route 22 and the Pittsburgh International Airport. (R.R. at 1882a.) According to Mr. Cummings, the study did not detect cyclical hydraulic fracturing stage data from the Moore Park well pad due to the U.S. Route 22 road noise. (R.R. at 964a.) TruHorizon also deployed a sound monitor at 9784 Steubenville Pike, near the Vance Objectors' property, located to the northwest and on the opposite side of U.S. Route 22 from the Moore Park well pad from October 25, 2019, to October 28, 2019 (2019 Sound Monitoring Study). (R.R. at 931a-38a.) Based on the 2019 Sound Monitoring Study and his personal observations, Mr. Cummings determined that the primary sources of noise at the monitoring point were vehicle traffic from U.S. Route 22 and Steubenville Pike and air traffic from Pittsburgh International Airport, and that sound from the permanent production operations of the Moore Park well pad would not be audible at the monitoring point or the Vance Objectors' residence. *Id.*

### vii.    Trial Court's Legal Conclusions Regarding Standing

The trial court found "Objectors' contention, that they suffered actual harm from facilities authorized by Ordinance 1-2014 to be speculative, unpersuasive[,] and unsupported by the hearing record as a whole." (F.F. No. 118.) Applying the standard for standing espoused in *William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269, 282-83 (Pa. 1975), the trial court determined that Objectors failed to show how the passage of Ordinance 1-2014 or the issuance of a permit for the Moore Park well pad resulted in "concretely demonstrable harm to them or their interests." (C.L. No. 127.) Specifically, the trial court held that Objectors failed to demonstrate a present impact to their interests, and that their complaints of noise, vibrations, odors, and air pollution could be attributed to a variety of sources and causes which existed prior to the passing of Ordinance 1-2014 and the permit application for the Moore Park

well pad. (C.L. No. 129.) The trial court concluded that there was no causal connection between the adoption of Ordinance 1-2014 and the impacts alleged by Objectors and that the evidence did "not credibly demonstrate" that Objectors suffered any direct, substantial, and immediate harms caused by the Moore Park well pad. (C.L. Nos. 131-132.) The trial court also held that the evidence did "not credibly demonstrate" that Objectors suffered any "greater direct, substantial[,] and immediate deleterious impacts from unconventional oil and natural gas drilling than those they encountered prior to the passage of Ordinance 1-2014." (C.L. No. 133.) The trial court further found, citing *Laughman v. Zoning Hearing Board of Newberry Township*, 964 A.2d 19 (Pa. Cmwlth. 2009), that none of the Objectors established standing by geographic proximity as the Lodge, Barrie, and Vance properties are 2.22 miles, 1.17 and .51 miles from the Moore Park well pad, respectively. (C.L. No. 122.) Following the trial court's ruling, Objectors appealed to this Court.

## II. Objectors' Appeal

On appeal,[8] Objectors raise a myriad of issues. The first issue, which relates to standing, has multiple subparts. Objectors argue that the trial court erred by concluding that they had not articulated an interest in the outcome of the litigation that was substantial, direct, and immediate. Objectors assert that, contrary to the trial court's conclusion, they not only articulated interests that were substantial, direct, and immediate through testimony of the multiple harms they had experienced, but they also expressed reasonable concerns as to prospective harms from future facilities and

---

[8] "When the court below considers additional evidence in a zoning appeal, we must determine on review whether that court committed legal error or abused its discretion." *Boss v. Zoning Hearing Board of Borough of Bethel Park*, 443 A.2d 871, 872 (Pa. Cmwlth. 1982). This Court has stated on numerous occasions that "[a]n abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 838 n.9 (Pa. Cmwlth. 2008).

16

development allowed by Ordinance 1-2014. They contend that the trial court failed to apply or address this Court's and the Supreme Court's standing precedent from *In re Broad Mountain Development Co., LLC*, 17 A.3d 434, 440 (Pa. Cmwlth. 2011), and *Grant v. Zoning Hearing Board of Township of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001), which held that landowners possess substantial, direct, and immediate interests when they have expressed reasonable concerns regarding how proposed uses will affect their property, change their enjoyment and expectations of their property, alter their zoning districts and surrounding environment, and affect their health and quality of life. Objectors also assert that the trial court should have applied the standard for standing applied by the Supreme Court in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013), which held that the very enactment of the statute and its preemption of protective zoning ordinances across Pennsylvania was sufficient to confer standing on the landowners.

In addition to asserting errors with respect to standing, Objectors raise several evidentiary challenges, arguing that the trial court capriciously disregarded the fact that the Moore Park well pad is not in a state of "permanent production" but will be developed in the future. Specifically, Range Resources' witness, Justin Welker, testified that Range Resources had only completed 9 of the 10 originally planned wells on the Moore Park well pad and has reserved the 10th well for the development of Utica shale. *See* R.R. at 1118a. When asked whether that meant there was "another [well] that [Range Resources was] going to drill in the future," Mr. Welker responded, "[a]t some point, yes, sir." *Id.* Objectors claim this fact, which the trial court disregarded, corroborated the reasonableness of their concerns as to ongoing and future harms from oil and gas development and facilities and contradicted the trial court's finding of fact that the Moore Park well pad is in "permanent production."

17

Next, Objectors contend that the trial court capriciously disregarded the 2015 Washington County Hazard Mitigation Plan, prepared by a private company, Michael Baker, Jr. Inc. for the Washington County Department of Public Safety, which they introduced into evidence as a party admission against the Township. (R.R. at 1409a-23a.) The Hazard Mitigation Plan, according to Objectors, provides that populations living within 1,000 feet of an unconventional oil or gas well are uniquely vulnerable to "oil and gas well incidents" including "explosions or other catastrophic incidents." (R.R. at 1419a.) Objectors argue that the trial court abused its discretion because it did not include the Hazard Mitigation Plan anywhere in its findings of fact and failed to address it in any way. Objectors argue that the Hazard Mitigation Plan is important because it supports that the Vances have standing because they live within 1,000 feet of the Moore Park well pad.

Additionally, they assert that the trial court abused its discretion by accepting as reliable and persuasive the opinions of Brent Cummings, the acoustical engineering expert witness offered by Range Resources with respect to certain sound studies. Objectors contend that Mr. Cummings applied a flawed methodology that did not comport with the industry standard.

Finally, Objectors argue that the trial court erred in granting a motion for a view of Range Resources' Moore Park well pad, while declining Objectors' request to include a well site in "active development" or one not in the direct control of Range Resources. They assert that by allowing a view of an inactive, quiet site and rejecting their request, the trial court improperly allowed into the record only evidence of a site not exhibiting negative impacts and not allowing into the record evidence that would corroborate and more accurately reflect Objectors' claims regarding their experiences with the Moore Park well pad and other similar sites.

18

Objectors ask that we reverse the trial court's order and remand the matter so that they may proceed with their challenge to overturn Ordinance 1-2014 "in order to prevent future, additional harms . . . from [Range Resources'] planned development of [a future well] at the Moore Park well pad . . . and further industrialization of their neighborhoods, their zoning districts, and the Township." (Objectors' Br. at 56.)

## III. Discussion

### i. Standing

Objectors submitted a facial challenge to the substantive validity of Ordinance 1-2014 pursuant to section 916.1 of the MPC, 53 P.S. §10916.1.[9] That section sets forth those persons who have the right to bring a substantive validity challenge:

> (a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use of development of land in which he has an interest shall submit the challenge. . . .

> (b) Persons aggrieved by a use or development permitted on the land of another by an ordinance or map, or any provision thereof, who desires to challenge its validity on substantive grounds shall first submit their challenge to the zoning hearing board. . . .

53 P.S. §10916.1.

Under subsection (a), Objectors would not have standing as a landowner because they do not allege that Ordinance 1-2014 affects the use or development of their land. However, subsection (b) allows persons who do not own the land affected

---

[9] Section 916.1(b) of the MPC was added by the Act of December 21, 1988, P.L. 1329.

19

by an ordinance to challenge the ordinance if they are aggrieved by a use or development permitted on the land by virtue of an ordinance.

In order to be aggrieved in the zoning context, a party must have a substantial, direct, and immediate interest in the claim sought to be litigated. *William Penn*, 346 A.2d at 284; *Laughman*, 964 A.2d at 22. To have a substantial interest, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. *Pilchesky v. Doherty*, 941 A.2d 95, 99 (Pa. Cmwlth. 2008). Therefore, a property owner who asserts no interest in the zoning challenge other than the interest common to all citizens does not have standing. *Broad Mountain,* 17 A.3d at 440; *Spahn v. Zoning Board of Adjustment*, 922 A.2d 24, 31 (Pa. Cmwlth. 2007). Therefore, it is not sufficient for the person claiming to be aggrieved to assert the common interest of all citizens in procuring obedience to the law. *William Penn*, 346 A.2d at 280-281; *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).

The interest must also be direct and immediate and not a remote consequence of the judgment. *Laughman*, 964 A.2d at 22. The interest is direct "if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative." *Fumo*, 972 A.2d at 496; *see also Empire Coal Mining & Development, Inc. v. Department of Environmental Resources*, 623 A.2d 897, 899 (Pa. Cmwlth. 1993).[10]

---

[10] "[P]roperty that is adjacent to or abuts the zoning area in question is in close proximity for standing purposes." *Worthington v. Mount Pleasant Township*, 212 A.3d 582, n.4 (Pa. Cmwlth. 2019). We have also held that "the owner of [a] property that is within 400 to 600 feet of the challenged zoning district is also within close proximity and has standing. However, the owners of property one-half mile and one mile or more away from the challenged zoning area have been deemed to not be in close proximity in order to confer standing." *Laughman*, 964 A.2d at 22-23 (holding that **(Footnote continued on next page…)**

Objectors claim that direct and corroborative evidence showed that they have experienced actual harm from facilities authorized by Ordinance 1-2014, including specifically the Moore Park well pad. Specifically, they assert that Mrs. Vance and Mrs. Barrie both testified as to the unbearable loud noises, vibrations, offensive odors, mechanical smells, and heavy traffic.

However, the trial court found that Objectors Vance and Barrie did not establish that either the challenged Ordinance or the Moore Park well pad were the cause of their alleged harms. The trial court concluded that the hearing evidence established that many of the adverse effects they complained of such as noise, vibrations, odors, and air pollution, were due to a variety of sources and existed prior to the passage of Ordinance 1-2014 and the permit application for the Moore Park well pad. The trial court found that the impacts felt by these Objectors could be due to any number of causes including unrelated oil and gas well sites in close proximity to Objectors' properties that are closer than the Moore Park well pad and predate Ordinance 1-2014 (F.F. Nos. 38-41), unrelated pipelines (F.F. No. 47), oil and gas drilling in neighboring townships (F.F. Nos. 51-51), air traffic from the Pittsburgh International Airport and road traffic from U.S. Route 22 (F.F. Nos. 53, 55), a nearby outdoor amphitheater which increases traffic and noise during certain times of the year (F.F. Nos. 61-64), illuminated billboards (F.F. No. 75), a 450 highway project that was closer in proximity to the Barries' and Lodges' property than the Moore Park well pad (F.F. No. 102), and discolored water which could not be attributed to the Moore Park

---

objector whose closest property was located .8 miles from a newly created overlay district was not a landowner in close proximity and, thus, lacked standing).

Here, none of the findings indicate that any of Objectors' properties abut or are adjacent to the Moore Park well pad or any other well site. The Lodge, Barrie, and Vance properties are 2.22, 1.17, .51 miles away from the Moore Park well pad, respectively. As such, none of the Objectors are in close proximity.

21

well pad even after a Pennsylvania Department of Environmental Protection (DEP) investigation.  (F.F. No. 80).

When a trial court takes additional evidence in a land use appeal, and exercises its own *de novo* review, it should make its own factual findings and legal conclusions. *Newtown Square East, L.P. v. Township of Newtown*, 38 A.3d 1008, 1012 n.5 (Pa. Cmwlth. 2011), *aff'd*, 101 A.3d 37 (Pa. 2014).  The trial court, as the fact finder in this case, is the ultimate judge of credibility and resolves all conflicts in the evidence. *Protect PT v. Penn Township Zoning Hearing Board*, 220 A.3d 1174, 1191 (Pa. Cmwlth. 2019).  As the fact finder, the trial court may reject even uncontradicted testimony if it finds that testimony lacking in credibility.  *Id*.  This Court may not substitute its interpretation of the evidence for that of the trial court.  *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 743 (Pa. Cmwlth. 2008).

Essentially, by arguing that the trial court ignored their testimony, Objectors are asking us to reweigh the evidence and substitute our credibility findings for the trial court's findings.  Our role is not to reweigh the evidence or determine the credibility of witnesses, but to determine whether, upon consideration of the evidence as a whole, the trial court's findings have the requisite measure of support in the record. *Protect PT*.  After a careful review of the record, we conclude that there was ample evidence to support the trial court's determination that neither the challenged Ordinance nor the Moore Park well pad were the cause of Objectors' concerns or alleged harms. *See Spahn*, 922 A.2d at 1151 ("In order to be immediate, there must be a causal connection between the action complained of and the injury to the person challenging it.").  Therefore, we conclude that the trial court did not err when it found

Objectors failed to establish standing by this testimony of the Vance or Barrie Objectors.

Next, Objectors argue that they established standing by expressing their concerns of possible future harm from the enactment of Ordinance 1-2014 and future operations of the Moore Park well pad. We must disagree.

A key component of the *William Penn* standing analysis, and whether an objector is "aggrieved" for purposes of the MPC, is whether the proposed use in question, or, in a substantive validity challenge, the challenged ordinance, actually causes the injury complained of by the objector. *William Penn*, 346 A.2d at 282; *see also Worthington*, 212 A.3d at 593 ("theoretical concerns do not satisfy the legal requirement that [the objector] have a substantial, direct, and immediate interest to have standing"); *Laughman*, 964 A.2d at 23 (a mere concern of remote consequences is not direct because all citizens share concerns regarding traffic and safety).

In *Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 689 (Pa. Cmwlth. 2018), the objectors testified that the construction at the Porter Pad site was "noisy" and "inconvenient[;]" voiced concern that their property may become "polluted[;]" and opined that their property values would decrease. We held that the zoning board's rejection of that evidence as lacking probative value was consistent with this Court's precedent and that "[t]estimony that merely speculates on possible harm lacks probative value." *Id*. at 690.

In *Gorsline v. Board of Supervisors of Fairfield Township*, 123 A.3d 1142 (Pa. Cmwlth. 2015), *reversed on other grounds*, 186 A.3d 375 (Pa. 2018), a gas company sought a conditional use permit to operate an oil and gas well. Neighboring landowners objected, expressing concerns about their well water, the increase in truck traffic, noise and light pollution. This Court explained that the objectors "expressed

23

concerns" consisted of no more than "speculation of possible harms[,]" which was "insufficient to show that the proposed natural gas well will be detrimental to the health, safety and welfare of the neighborhood." 123 A.3d at 1153.

This Court reached the same conclusion in *EQT Production Company v. Borough of Jefferson Hills*, 162 A.3d 554 (Pa. Cmwlth. 2017). In that case, the objectors presented evidence about the negative impacts oil and gas operations have caused in other communities. This Court held that this evidence was insufficient to satisfy the objectors' burden of proof because their evidence was not specific to the well site at issue. Nor did the objectors relate the experience of other communities to the well site they challenged. *Id*. at 563.

Here, Objectors' concerns about the "sprawling nature of the construction and development of oil and gas facilities and infrastructure in Robinson Township and their concerns and feelings as to future development and the transformation of the vicinity of their homes and the Township into industrial areas" (Objectors' Br. at 23) were speculative. The trial court's rejection of that evidence was entirely consistent with this Court's precedent that testimony that merely speculates on possible harm lacks probative value.

Objectors contend that the trial court should have applied *Grant* and *Broad Mountain*, where this Court held that in the context of land use matters, landowners' reasonable concerns as to the effects of proposed development were enough to confer standing. Objectors' reliance on these cases is misplaced. *Grant*, involved two permanent 60-foot exhaust towers that were demonstrated to blow waste products and noise to the objector's property. *Grant*, 776 A.2d at 359. Additionally, unlike here, the power company in *Grant* did not object to standing, nor was there any dispute about the continual impact the plant would have on the objectors' home. *Id*. at

24

358-59. Likewise, the challenged use in *Broad Mountain* consisted of 27 wind turbines, with objectors who lived within a half mile of the use and who demonstrated that they experienced constant noise, light flickering, and potential ice shedding in freezing conditions. *Broad Mountain*, 17 A.3d at 440-41. Here, by contrast, no record evidence presented by Objectors established that they live in proximity to the Moore Park well pad or that the Moore Park well pad caused any of the adverse impacts complained of by Objectors.

Objectors' reliance on *Robinson Township* to establish standing is also misplaced. *Robinson Township* did not establish legal precedent with respect to the issue of standing of individual landowners and residents in the context of ordinance validity challenges under the MPC. *Robinson Township* in no way announced a new rule of law that individual objectors have automatic standing to pursue the validity of a zoning ordinance in the abstract or that oil and gas development is necessarily incompatible with Pennsylvania citizens' constitutional rights. In fact, Pennsylvania courts have, after *Robinson Township* was decided, held that oil and gas development is compatible with other uses in rural and agricultural districts upon an analysis and decision by the local governing body. *See Gorsline*, 186 A.3d 389 (holding that pursuant to section 601 of the MPC, the governing body of a municipality may amend its zoning ordinance to permit oil and gas development in any or all of its zoning districts); *Frederick* (affirming a decision of a zoning hearing board that upheld unconventional natural gas development as a permitted use by right in all of the township's zoning district); *Kretschmann Farm v. Township of New Sewickley*, 131 A.3d 1044 (Pa. Cmwlth. 2016) (upholding the conditional use approval of a gas compressor station located in New Sewickley Township's A-1 Agricultural District);

25

*Brockway Borough Municipal Authority v. Department of Environmental Protection*, 131 A.3d 578 (Pa. Cmwlth. 2016).

### ii. Evidentiary Issues

Objectors first argue that the trial court capriciously disregarded testimony from Justin Welker indicating that another well would have to be drilled at the Moore Park well pad. They argue that this testimony corroborates their concerns regarding their safety, and is relevant to the standing issue. However, as we have just explained, Objectors' speculative concerns regarding safety are not sufficient to confer standing. *Laughman*, *Gorsline*, *Frederick*, *EQT*. As to a capricious disregard of evidence this Court has stated that where substantial evidence supports the findings of fact, and the findings of fact support the conclusions of law, "it should remain a **rare instance** where an appellate court disturbs an adjudication based on capricious disregard." *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 815 (Pa. Cmwlth. 2005) (emphasis added). "A capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. Capricious disregard of evidence is a deliberate and baseless disregard of apparently reliable evidence." *Id*. (citations omitted).

Earlier in his testimony, Justin Welker clearly testified that the Moore Park well pad was in permanent production and had been for several years. (R.R. at 1097a.) In fact, he testified that the Moore Park well pad was anticipated to be in permanent production for several decades. (R.R. at 1114a.) Objectors contend that his testimony is contradictory to the trial court's finding that the well was in "permanent production." We disagree. This testimony is easily reconcilable with the trial court's finding. The trial court found as a fact that the Moore Park well pad "is **now** in 'permanent production.'" (F.F. No. 93) (emphasis added). This finding can easily be

26

read to understand that the Moore Park well pad is **currently** in permanent production and does not preclude the possibility that it may need to be drilled in the future. The trial court's finding does not indicate that the Moore Park well pad will be in permanent production for perpetuity. This is consistent with Justin Welker's testimony.

Next, with regard to the trial court's allegedly improper rejection of evidence, Objectors argue that the trial court entirely ignored the Hazard Mitigation Plan they offered into evidence, which provides that populations living within 1,000 feet of an unconventional oil or gas well are uniquely vulnerable to oil and gas well incidents. The Hazard Mitigation Plan covers a variety of topics including winter storms, blizzards, dam failure, and conventional and unconventional well drilling. (R.R. at 1408a-23a.) Objectors rely on a portion of the Hazard Mitigation Plan, which states:

> Vulnerability to oil and gas well incidents is defined as being located within 1,000 yards of an unconventional oil or gas well. This buffer is what DEP uses as its "zone of culpability" for oil and gas well incidents. While explosions or other catastrophic incidents at an oil or gas well could cause property damage, of primary concern is the population living near these wells.

(R.R. at 1419a.) As noted, the Hazard Mitigation Plan was admitted without any corroborating witness testimony. The trial court explained that the findings that it made were based upon the evidence in the record that it deemed credible and reliable. Indeed, although the trial court admitted the Hazard Mitigation Plan into evidence, the fact that it did not refer to it indicates that it did not find the Hazard Mitigation Plan to be credible or reliable. Critically, the trial court is free to believe all, part, or none of the testimony presented at trial and this Court may not reweigh the evidence or substitute its judgment for that of the trial court. *Southwest Regional Tax Bureau v. Kania*, 49

27

A.3d 529, 532 n.5 (Pa. Cmwlth. 2012); *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007). Moreover, Objectors have pointed to no authority that required the trial court to propound, in its opinion, how it weighed every piece of evidence presented by either or both parties. The trial court made the findings necessary to resolve the issues raised by the evidence and relevant to the decision. Accordingly, we find the omission of this evidence by the trial court did not amount to a capricious disregard and did not constitute legal error.

Next, Objectors argue that the trial court erred when it found credible and persuasive the testimony of Range Resources' expert witness, Brent Cummings, on the basis that he allegedly applied a "flawed methodology." Objectors argue that the trial court should not have accepted his opinion because he admittedly did not rely on "industry standard" methods. We find Objectors' assertion to be without merit.

In projecting sound levels and measuring ambient levels, Mr. Cummings averaged sounds hourly based on measurements taken every minute. Mr. Cummings further testified that because Ordinance 1-2014 did not specify what methodology is to be used when conducting a sound study, he could "make a choice [as to the method] as a professional." (R.R. at 964a.) Mr. Cummings explained that averaging minute by minute data points will still accurately capture peak sounds. (R.R. at 963a-64a.) Mr. Cummings' testimony was challenged extensively on cross-examination and was therefore disputed evidence that the trial court was free to accept or reject. *Township of Salem v. Miller Penn Development*, 142 A.3d 912, 922 (Pa. Cmwlth. 2016).

### iii. View of the Well Pad

Objectors argue that the trial court erred by granting Range Resources' motion to view the Moore Park well pad when it was not in active development, and by denying Objectors' request to include in the view a site during active development

not within the control of Range Resources.

Both the Pennsylvania Rules of Civil Procedure and the MPC permit the trial court to order a view. Pa.R.Civ.P. 219, 4009.32; 53 P.S. §10908(8). The decision to grant a view is totally within the trial court's discretion and Pennsylvania courts have rarely reversed a trial court's decision to grant or not grant a view. *See* 1 West's Pa. Prac., Evidence § 425-6 (Views) (4th ed. 2021). The view's function is illustrative, not evidentiary, and its purpose is to aid the fact finder in understanding the evidence presented in court and resolve conflicts in testimony. *Id.*

As the Moore Park well pad was the well at issue, we cannot find the trial court abused its discretion in only allowing a view of that site.

## IV. Conclusion

Accordingly, because the record provides substantial evidence for the trial court's decision and there is no basis for finding capricious disregard of the evidence, we affirm the decision.

_____
PATRICIA A. McCULLOUGH, Judge

29

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Christopher Lodge, Cathy Lodge, : <br> Nolan Vance, Brenda Vance, : <br> Richard Barrie, and Irene Barrie, : <br> Appellants : <br> : <br> v. : <br> : <br> Robinson Township Zoning Hearing : <br> Board : <br> : <br> v. : <br> : <br> Robinson Township, Range Resources - : <br> Appalachia, LLC, and More Park, L.P. : | No. 813 C.D. 2020 |

## ***ORDER***


AND NOW, this 4th day of August, 2022, the July 16, 2020 order of the Court of Common Pleas of Washington County is hereby AFFIRMED.


_____
PATRICIA A. McCULLOUGH, Judge